## VENABLE, guardian, *vs.* CODY.

A trustee may discharge himself from liability by showing that he received Confederate money at a time when it was the common and only currency, and when prudent business men were receiving it, and that it became worthless in his hands; but the facts and circumstances under which it was received must be clearly and satisfactorily shown as evidence of good faith, and the burden is on the trustee.

(*a.*) In the present case the trustee failed to sustain the onus thus cast on him.

Guardian and Ward. Trusts. Confederate Money. Before Judge ERWIN. Jackson Superior Court. February Term, 1881.

Reported in the decision.

W. L. MARLER; J. B. ESTES & SON, for plaintiff in error.

W I. PIKE, for defendant.

CRAWFORD, Justice.

This case arose on a statutory proceeding instituted by Cornelia Cody against John Venable, her guardian, citing him to appear before the ordinary of the county, and submit to a settlement of his accounts. The case was carried by appeal to the superior court, and upon the trial had the plaintiff recovered the sum of $482.97, besides interest. The defendant moved for a new trial, because the verdict was contrary to law and contrary to evidence, which motion was refused, and he excepted.

The guardian was appointed, and received for his ward $495.30 in February, 1859. His defence to the suit was that the estate drifted into Confederate money, and was lost by the results of the late war between the states. And in further defence he pleaded a final settlement and receipt in full.

The evidence shows that in payment of his ward's estate he received his own note from the administrator of her father's estate.   He paid out from 1860 to 1863 inclusive, some small sums for which he had vouchers approved by the ordinary.   It further appears that in September, 1875, he went to the house of Cornelia Cody's step-father, reaching there after dark, and just before or after midnight, paid her fifty dollars in settlement of his liability as her guardian, and took her receipt in full.   He told her that her estate had all gone into Confederate money and insolvent notes.   No further explanation was given or showing made, and no exhibition of his management of her affairs.

When it is remembered that the payment to him by the administrator of his ward's father was in his own note; that no proof was offered to show that he ever had in his possession one dollar of either Confederate or any other kind of money set apart to his ward; that he made no statement to her of the manner in which her money had been used; offered her neither Confederate money nor the insolvent notes which of right were hers; that he went after dark to her father's, and about 11 o'clock by one witness, and after midnight by another, this receipt was obtained, we are not surprised at the finding of the jury. The more especially is this so, when we further remember that even upon the trial of the case no testimony was produced to show that he had acted in good faith to preserve this estate, nor how, nor in what manner, he had failed to do so.

Trustees have heretofore, and can now discharge themselves from liability by showing that they received Confederate money when it was the common and only currency, and when prudent business men were receiving it, but the facts and circumstances under which it was received, must be clearly and satisfactorily shown as evidence of their good faith and the fairness of the transaction.   48 *Ga.*, 471.   The burden of proof is on them and

to discharge themselves they must produce it. Not having been done in this case, the judge committed no error in refusing a new trial.

Judgment affirmed.