Darwin Shapiro, Minor, by Bessie Shapiro, His Mother and Next Friend, Appellee, v. City of Chicago, Appellant.

Gen. No. 41,381.

Opinion filed February 26, 1941.

BARNET HODES, Corporation Counsel, for appellant; L. LOUIS KARTON, ALEXANDER J. RESA, SYDNEY R. DREBIN and J. HERZL SEGAL, Assistant Corporation Counsel, of counsel.

BARASA, RINELLA & BARASA, of Chicago, for appellee; BERNARD P. BARASA and JOSEPH BARBERA, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Darwin Shapiro, a minor, by Bessie Shapiro, his mother and next friend, brought suit against the City of Chicago because of personal injuries alleged to have been received by plaintiff through the negligence of defendant in permitting an attractive nuisance to remain in a public alley. The cause was tried before a judge and jury which resulted in a verdict in favor of plaintiff for $10,000 and against the defendant City of Chicago, from which judgment defendant brings this appeal. Motions of defendant for a directed verdict, for a new trial and in arrest of judgment were denied.

Plaintiff contends that the City of Chicago is liable for the injuries sustained by plaintiff on the ground that it negligently permitted an attractive nuisance to be and remain in a public alley and on a lot or opening adjacent to said alleyway.

Defendant contends that a municipality is not liable for injuries sustained by plaintiff due to the presence of an attractive nuisance on private property extending for a slight distance over a public way; and that the city's nonexercise of a police power to abate a nuisance does not render it liable to tort to the plaintiff for the injuries sustained by him.

No point is raised on the pleadings.

It appears that for a period of approximately three and a half weeks prior to July 30, 1937, the date of the accident, a 1927 Chrysler coupe was parked on Burling street, a street which runs north and south in the City of Chicago and is immediately east of Halsted street; that at the northwest corner of Webster and Burling street is a large vacant lot; that Webster avenue runs east and west at 2200 north, and Belden avenue is the first east and west street north of Web-

ster; that said parked automobile remained on Burling street for nearly a week; that said automobile had a ripped top which was down, one tire was off and three tires were flat.

It further appears that there is some dispute as to whether there was a cap on the gasoline tank of the automobile; that boys who customarily played ball in the large vacant lot at the corner of Burling and Webster streets drove the car onto Webster after a mechanic started the automobile for them; that the boys left the automobile there for 3 or 4 hours while they played ball and then several of them pushed the car into the alley between Halsted street and Burling street and the front end of it extended into the vacant lot in the rear of 2211 North Halsted street; that the car was left there facing west; that because of the hilly condition of the vacant lot the boys had been unable to push the car completely out of the alley, but that the rear end of the automobile extended into the alley; that the automobile remained there for a period varying from four days to two and one-half weeks and that there was gasoline in the tank of said automobile.

It further appears that while the automobile was on Burling street, Police Squad Car No. 141 drove up and one of the officers warned the children to keep away from it as it was a stolen car.

An officer on auto detail testified that on July 27th, he found the automobile parked in front of 2201 Burling street and made a report of it to stolen auto detail directing them to tow the car away and junk it; that he did not see the car after that and never saw the car in the rear of the Halsted street premises.

Testimony was offered showing the automobile was parked on Burling street and during the time it was parked in the vacant lot in the rear of 2211 North Halsted street children played around the car.

The owner of the premises at 2211 North Halsted street, Otto Kreuzer, testified that about July 26, 1937, he telephoned the Hudson avenue police station and

reported the automobile and asked that it be removed and that he again telephoned the following day.

George Klein, a witness on behalf of plaintiff, testified that Kreuzer telephoned the police station and reported the car at least two weeks before July 30, the date of the accident, and asked that said automobile be removed.

The evidence shows that Darwin Shapiro who on July 30, 1937, was a child 6 years of age, was playing in the vacant lot heretofore referred to, with a boy named Donny Tripto; that Donny Tripto found a package of paper matches in a can and he lighted one of them and threw it into the gasoline tank of the abandoned automobile, which was practically in the public alley; that said tank contained some gasoline and an explosion resulted which set plaintiff's clothes on fire and he sustained the injuries of which he now complains.

The evidence further shows that plaintiff was taken to St. Joseph's Hospital where he remained for 3 weeks; that he sustained first and second degree burns on the left side of his body, the left side of his neck and part of his face, arms, forearms and hands and that from 30 per cent to 35 per cent of the total body area was involved in these burns; that plaintiff was treated for burns and for shock and that after he returned to his home the doctor saw plaintiff twice at his home and later several times at his, the doctor's office; that Dr. Kratz' bill for services was $147.

The evidence further shows that in December, 1937, plaintiff had an irregular shaped scar on the right side of the chest, covering the region of the pectoralis major muscle almost up to the shoulder, about six inches long and about an inch and a half wide; a scar on the medial surface of the upper arm about five inches long; that there were smaller scars on the abdomen and the left side of the chest, the legs and ear, the right hand and fingers and some scars on the lower back region; that

he had several large areas of skin devoid of pigment; that the pectoralis major was atrophied and there is a limitation in the freedom of the shoulder motion. Dr. Malone testified that the condition was permanent.

The evidence further shows that after plaintiff came home from the hospital, boils broke out all over his body; that he did not sleep nights; that when he did sleep he had to sleep on his hands and knees because he could not lie on his back and that he was in constant pain; that since the accident he has nightmares and wakes up during the night screaming and scratching the scars; that he is very nervous and fidgety, does not sleep or study well; that before the accident he studied well, was not fidgety or nervous and never had nightmares.

The evidence further shows payment to the nurses in the sum of $80 and hospital bill for $46.05.

There does not seem to be much dispute as to the facts. It is conceded that the abandoned automobile caused the injury to the plaintiff; that said automobile had been upon the public streets and public alley in the City of Chicago in the neighborhood herein described, for several days or possibly a week and that the abandoned automobile and its condition had been reported to the police authorities and therefore the City had ample notice thereof. There is little doubt that this abandoned automobile was an attractive nuisance as we can conceive of no one thing which would be more attractive to the mind of a child than an abandoned automobile which could be operated.

The evidence affirmatively shows that during all the time the automobile remained in the neighborhood where it had been abandoned, children were attracted to it and were almost constantly playing on or around said automobile. As we have heretofore stated the city had both actual and constructive notice that this abandoned automobile was in the alley at the location aforesaid, but they did nothing to remove this nuisance.

A case very similar to the instant case is that of *Fleming v. City of Chicago*, 260 Ill. App. 496, in which case an abandoned truck chassis was permitted to remain in an alleyway in the rear of 657 West 63rd street in the City of Chicago. There was some difference of opinion as to the length of time the truck was in the alleyway prior to the date of the accident, but the testimony showed that the police had been notified by telephone that the truck chassis was upon the highway, about a month before the accident. Plaintiff a child of 7 years, in company with other boys, was playing on the truck in question, and while the truck was going down an incline, plaintiff fell off and was injured. This court in affirming a judgment for plaintiff, at pages 503, 504 and 506, said: "The evidence indicates that for a period of time the abandoned chassis was upon the highway. Not only that, but the evidence tends to show that the agents of the defendant were notified, and that on February first of the same year, two Chicago policemen examined it. The city had not only constructive but actual notice of this abandoned truck chassis. The question therefore is, Was this instrumentality such an attractive nuisance on the public highway as to attract children, and dangerous to the safety of the child riding on it? It must be admitted that children of tender years playing upon a public street, as they lawfully may play, would be more likely to be attracted by an abandoned truck chassis upon a public highway than if it had been located upon private property. *Flis v. City of Chicago*, 247 Ill. App. 128. It is the duty of the municipality to abate such a nuisance after it has notice, and failure to do so would make it liable for such negligence where a child was allured and attracted, and who from childish instinct was drawn into danger and injured through no fault of its own, and where the child was exercising that degree of care and caution required by law.

"The accident to the boy in the instant case, and consequent injury, would not have happened but for

the failure of the defendant to abate this nuisance, which was the result of carelessness on the part of the city. The city must be held liable, provided of course plaintiff minor was in the exercise of ordinary care for his own safety, such as is required by law.''

In the instant case defendant contends that it is not liable because only a portion of the automobile was in the alley and that defendant would have been required to enter upon private property in order to remove the automobile and it would thereby be exercising police power which would amount to a governmental function, consequently the city cannot be held liable in tort for failure to so act. The evidence in this case shows that the owner of the property, upon which property the front part of the abandoned automobile was located, had requested on two occasions that the defendant remove the automobile from the alley at the rear end of his premises. It is apparent, therefore, that, even if it were necessary that defendant enter the lot in order to remove the automobile from the alley, it could have been done by defendant without exercising its police powers, since it had the owner's permission to enter the lot in question, and considering the position of the automobile in the alley, it is quite obvious it could have been removed therefrom without the slightest necessity of encroaching upon private property. It has been held by the Supreme Court of this State that the removal of such an obstruction from the streets and alleys of a municipality is strictly a corporate function for which the city may be held liable, if negligent.

In the case of *Roumbos v. City of Chicago,* 332 Ill. 70, a girl 4 years of age was sitting at the edge of the sidewalk on the lower step of a stairway leading to the street. A street sweeper, employed by defendant city set fire to a pile of trash on the curb about 5 or 6 feet from where the child was sitting, and then went away. The wind blew the flame across the sidewalk, set fire to the child's dress and she was so badly burned that

she died the same day. A verdict for plaintiff was returned on the charge that defendant city negligently started the fire and negligently left it unguarded. The city in that case contended that the charges complained of came within the definition of a governmental function. The court in deciding this point in favor of plaintiff, at pages 82, 84, said:

"It is argued that the city was acting under the police power for the preservation of the public health by causing the streets to be cleaned. The language of the Court of Appeals of New York in an action brought against the city of New York to recover damages for the death of a child run over and killed by an ash-cart of the cleaning department of the city is a fitting answer to this argument: 'The fact that the discharge of this duty might incidentally benefit the public health did not make the acts of the commissioner of street-cleaning a public function. It is clear upon principle and authority that the city of New York in the ordinary and usual care of its streets, both as to repairs and cleanliness, is acting in the discharge of a special power granted to it by the legislature, in the exercise of which it is a legal individual, as distinguished from its governmental functions, when it acts as a sovereign.' (*Missano v. City of New York,* 160 N. Y. 123.) The United States circuit court of appeals for the eighth circuit, in answer to the same argument, said: ' . . . Nevertheless the overwhelming weight of authority is to the effect that the superintendence and care of the streets and alleys of a city, and all that directly pertains thereto, are peculiarly in the class of municipal duties for the neglect of which the city, in its corporate character, is liable.' "

· · ·

"In this State the care of the streets and sidewalks, their lighting and maintenance, have always been held to be the corporate functions of the municipality, and the municipality has been held liable for the negligence of its employees in the performance of those functions

which has resulted in injury to others. There is no difference in kind between these functions and the cleaning of the streets. All are provided for by the same statute in the same terms, and the same rule of liability should apply to all.''

In the instant case defendant takes a position which is not supported by the evidence and from such wrong premise argues that the defendant is not liable. Defendant has not favored us with any authorities which support its contention.

Defendant complains that the court erred in refusing to give two instructions. One has but to read these instructions to determine that they were not only confusing by their terms, but would not aid the jury in deciding the issues presented to them. We believe the court committed no error in refusing to give the instructions of which defendant complains.

Defendant further contends that the verdict of the jury, upon which the court entered judgment, is excessive. We cannot agree with defendant in this regard. Plaintiff, a boy 6 years of age, was scarred and injured for life. The pain, suffering and injury, which he endured at the time of the accident and for months thereafter, will never be entirely eradicated either from his memory or from his physical appearance, but will continue on throughout his entire life and the normal, natural human existence to which he should have been entitled will not be his. In this case we believe the judgment of the trial judge and a jury of twelve men would be better than that of a reviewing court, as the trial judge and the jury were in a position to see the witnesses and hear them testify and could better judge as to their credibility. There is no evidence of prejudice or passion and we can find no reason for disturbing the judgment.

For the reasons herein given the judgment of the circuit court is affirmed.

*Judgment affirmed.*

Hebel, P. J., and Burke, J., concur.