## Eleanor Sykes, by Felix J. Sykes, Her Father and Next Friend, Appellant, v. City of Berwyn and Joseph Pilat, Defendants. City of Berwyn, Appellee.

**Gen. No. 42,412.**

Opinion filed November 4, 1943.

STANLEY S. DAY, of Berwyn, and GEORGE J. HADDAD, of Chicago, for appellant.

WM. J. KRIZ and OTTO M. HAMER, both of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff filed an action against City of Berwyn, a municipal corporation, and Joseph Pilat. Plaintiff's amended complaint was later amended on its face by stipulation. Defendant Pilat filed an answer and the suit as to him is at issue and awaiting trial. The amended complaint, as amended on its face, consists of three counts. Count III concerns defendant Pilat only. City of Berwyn filed a verified motion to strike counts I and II of the amended complaint as amended and to dismiss the suit as to it, which motion was sustained, and plaintiff electing to stand on said counts an order was entered that plaintiff take nothing by her action against defendant City of Berwyn, that said defendant go hence without day, and that it recover its costs from plaintiff. Plaintiff appeals from that order.

Counts I and II of the amended complaint as amended on its face allege:

"Eleanor Sykes . . . complains of the defendants, City of Berwyn, a municipal corporation of Illinois in Count I hereof and of City of Berwyn, . . . and Joseph Pilat in Count II hereof, and of Joseph Pilat in Count III hereof, and states:

"Count I

"1. The defendant, City of Berwyn is, and was during the entire year 1936 and for a long time prior

thereto, a municipal corporation organized and existing under and by virtue of the laws of the State of Illinois. *The plaintiff is a female minor under the age of eighteen years.*

"2. The said City did, during the entire year 1936, and for a long time prior thereto, maintain a police department, lawfully created by said City, consisting of a number of persons duly appointed thereto pursuant to the laws of Illinois and the ordinances of said City.

"3. During the entire year 1936 and for a long time prior thereto, the said City *pursuant to authority vested in it by law* required the members of the said police department to perform, and said members did perform, certain duties in addition to the duties of enforcing the laws of the State of Illinois and the Federal government and the ordinances of said City, which additional duties were of a proprietary and corporate nature and not of a governmental nature and were for the exclusive benefit of said City and its inhabitants. Such additional duties consisted of keeping a lookout for defects in the sidewalks, streets, alleys, street lights, sewers and water mains of said City, and reporting the same to the various authorized officers of the said City who were charged with the duty of maintaining and repairing said utilities, and also consisted of removing obstructions upon the streets, alleys and sidewalks of said City. Said water mains were part of the system of furnishing water to the inhabitants of said City and maintained by the said City in its corporate capacity.

"4. Said City did, on November 13, 1936, and for a long time prior thereto, own and maintain a certain automobile for the exclusive use of the members of its police department in carrying out all of the duties imposed upon them, including the duties mentioned in the preceding paragraph of this Count.

"5. Joseph Pilat was on November 13, 1936, and for a long time prior thereto, a duly appointed member of said police department and the duly appointed Chief of Police thereof, which office was created pursuant to law.

"6. On November 13, 1936, said automobile was parked in front of or near the premises known as 6728 Windsor Avenue, Berwyn, Illinois, being the premises which were then occupied and used by the said City as the headquarters of its police department. Said automobile was not in active use at the time of the occurrence hereinafter described. The said Joseph Pilat, as the agent, servant or employee of the said city, while engaged upon its corporate business and acting within the scope of his authority as such agent, servant or employee, on said date and while said automobile was so parked and while cleaning out said automobile to prepare it for use by him and other members of said police department in the performance of their general duties as members of said police department, *including the additional duties mentioned in paragraph 3 of this Count,* so negligently and carelessly removed a block of wood from said automobile that said block of wood came in contact with the plaintiff who was lawfully walking upon and along the public sidewalk near the parking place of said automobile, and while she was in the exercise of due care for her own safety, and she was thereby knocked down to and upon the sidewalk.

"7. By reason of the premises, the plaintiff sustained serious and permanent injuries . . . .

"Wherefore, plaintiff prays judgment against the defendant, City of Berwyn, a municipal corporation of Illinois, in the sum of $50,000.00 and costs.

"Count II

"1–7. Plaintiff hereby realleges paragraphs 1 to 7, both included, of Count I of this Complaint *as Amended* as paragraphs 1 to 7, respectively, of this Count.

"8. The said Joseph Pilat is one of the defendants in this cause. . . ." (Italics ours.)

The italicized words in the foregoing amended complaint as amended constitute the amendments that were made on the face of the said complaint by stipulation.

Defendant City of Berwyn's verified motion to strike counts I and II and to dismiss the cause as to it alleges, *inter alia,* that said counts are insufficient as a matter of law to state a cause of action for civil damages against it. The motion is a lengthy one and the material contentions raised therein are stated by defendant in its brief, and they are hereafter referred to in this opinion.

Plaintiff contends that the amended complaint as amended states a good cause of action against defendant City of Berwyn under the doctrine of *respondeat superior,* for the following reasons:

"(1) The police department, of which Pilat was the chief, was charged by the city with the performance of dual functions, governmental and non-governmental.

"(2) The negligence of the defendant's agent, Pilat, did not occur while he was engaged in the performance of a purely governmental function.

"(3) The negligence did occur in the maintenance of an automobile owned by the city, and used by its police department in the discharge of both governmental and non-governmental functions."

Defendant City of Berwyn contends that under the allegations of the amended complaint as amended it must be held that Pilat, as chief of police, in cleaning out the police squad car to prepare it for the use of the police department was acting as a member of the police department of the City in a governmental capacity; that the automobile was part of the equipment of the police department and that Pilat, as chief of police, in cleaning it out, was acting in the line of his

duty as a policeman; that the principal or dominant duties of the chief of police were police duties, which are purely governmental; that the additional duties alleged in paragraph 3 of the complaint were merely incidental or subsidiary duties to his ordinary police duties and that it would be a new, far-reaching and dangerous doctrine to hold the City liable in the instant case upon the allegations of the complaint.

Plaintiff argues that under the allegations of the amended complaint as amended Pilat, when he patrolled his beat, used the car in dual activities—governmental and non-governmental—and that in cleaning the car he was performing a duty incidental to both activities, and that "by combining its public and private activities, the city forfeits its immunity where the negligence occurs in the maintenance of an instrumentality that is used indiscriminately in the discharge of both functions." The principal Illinois case cited by plaintiff in support of her position, is *City of Chicago v. Selz, Schwab & Co.*, 202 Ill. 545, where the plaintiff sued the city for damages because water flowed into the basement of its place of business due to a defective fire hydrant which was connected with a water main in the center of the street, which hydrant and water main constituted a part of the water-works system of the city and was under its control. Plaintiff's manager had notified defendant that (p. 546) "there was a leak at the bottom of the hydrant, and some water was coming from the leak through small crevices in the floor of the basement of the building." The Supreme Court, in its opinion, states (pp. 550, 551): ". . . we find a proposition of law asked by the defendant, which the court refused to hold, to the effect that the hydrant and connecting pipe being part of the appliances of the fire department, placed there for the main purpose of supplying that department with water for putting out fires, the separation of the connecting pipe from the hydrant, through the negli-

gence ·of those having charge of it, would not render the defendent liable. The facts proved were, that this pipe and hydrant were placed there about twenty-seven years ago, and that the system of water-works was constructed for the double purpose of protection against fires and supplying the inhabitants of the city with water, and has been used for both purposes ever since. Even this particular fire hydrant was made a source of income to the city by selling water from it to contractors for street sprinkling under licenses, and they paid the city for the water. It cannot be said, therefore, that either the water system or this hydrant was constructed or used merely for public protection by putting out fires under the exercise of the police power. Both were constructed and employed by the defendant, in part at least, in its private and corporate capacity. A city is not liable, under the doctrine of *respondeat superior,* for the unlawful or negligent acts of its officials in the exercise of the police power, *and if the break had resulted from the negligence of firemen engaged in the line of their duty in extinguishing a fire the defendant would not be liable. (Wilcox v. City of Chicago,* 107 Ill. 334; *Culver v. City of Streator,* 130 id. 238.) The injury to plaintiff did not arise from negligence in the use of the hydrant for the purpose of extinguishing fire. *The business of selling water to inhabitants and street sprinkling contractors is not an exercise of the police power, and the city is not exempt from liability for negligence in maintaining such system.* As applied to the facts of this case the proposition did not state the law, and was properly refused." (Italics ours.) The negligent servants of the city in that case were neither firemen nor policemen. The decision is based upon the theory that the city was liable for the negligence of its servants—not firemen nor policemen—because the business of selling water to inhabitants and street sprinkling contractors was not an exercise of the police power.

In *Bell v. Pittsburgh,* 297 Pa. 185, cited by plaintiff, it appears that the county and city jointly owned and occupied a building for governmental and business purposes and part of the building was rented to private enterprises for the purpose of lessening the cost of government operation. In each end of the building there were elevators, one-half of which were operated by the county with its labor, the other half by the city under a similar arrangement. The plaintiff was injured by the negligent operation of one of the elevators by the elevator operator and it was held that both the city and county were liable under the facts of the case.

In *City of Meridian v. Beeman,* 175 Miss. 527, cited by plaintiff, a city policeman, while patrolling his beat in an automobile, negligently ran over the plaintiff. The proof showed (p. 536): ''that by virtue of several ordinances of the city each of its policemen is required *to constantly note while on his beat,* and to report as occasion requires, the condition of bridges, culverts, sewers, drainpipes, streets, and sidewalks, and also as to the condition of all street lights, and also as to any accidents that may have happened in his beat in regard to gas or water works, and the like,'' (italics ours) and the Mississippi court held the city liable upon the authority of *Bell v. Pittsburgh, supra.* In our judgment, that case, under its facts, is not an authority that supports the decision of the Mississippi court. Two of the judges of the Mississippi court joined in the following dissenting opinion (p. 537):

''The law has been so long and so firmly settled that a municipality is not liable for the negligence of its officers, agents, and employees while in the performance of governmental duties, that I think any modification thereof or any declaration which would substantially trench upon the practical operation of the rule should be made by legislative enactment rather than by judicial decision. The duties of a policeman

are principally governmental, and such minor duties as were imposed by the ordinances here brought under review in respect to the corporate duties of the policeman were merely incidental or subsidiary. Doubtless such incidental duties are imposed generally upon policemen, throughout this state, as well as in other states. Therefore, as it seems to me, it would be more in accord with the settled principles and philosophy of the law to hold, in such a case as this, when nothing is shown than simply that the policeman was patrolling his beat, that the policeman was engaged in the performance of those duties which are his principal or dominant duties, which are governmental. Otherwise the settled rule in all substantial and practical respects becomes reversed from that so long declared in the law, and is left as a mere shadow or shell, so far as such officers of the city are concerned.''

In the *Mississippi* case the policeman was patrolling his beat in an automobile when the accident occurred. In the instant case the police car was parked in front of police headquarters and Pilat was cleaning it in order to prepare it for use by him and other members of the police department. In the majority opinion filed in the *Mississippi* case appears the following (p. 536): ''The court is not confronted with a case where, at the time, the testimony shows that the police officer was definitely in pursuit of a criminal, or was definitely responding to an emergency call in respect to those duties which are distinctly police in their nature; and this opinion and decision is not to be construed as covering such a case.'' Here the court plainly implies that had the City of Meridian shown that the police officer at the time of the accident was engaged in duties that were ''distinctly police in their nature,'' the fact that the policeman was also required by the statutes to perform non-governmental duties while on his beat would not have aided the plaintiff in that case. In the instant case, plaintiff contends that because the City

used the squad car in the discharge of governmental and non-governmental functions it thereby forfeited its right of immunity. If this contention is sound, then, if Pilat at the time of the accident were pursuing a felon, the City could not successfully assert that Pilat was then engaged in governmental duties.

*Carrington v. City of St. Louis,* 89 Mo. 208, also cited by plaintiff, has no application to the instant case.

In *Randolph v. City of Chicago,* 315 Ill. App. 85, also cited by plaintiff, it was held that it was the duty of a policeman to notify the proper officer of the damaged condition of a sidewalk and that notice to the police officer was notice to the city.

While it is true, as plaintiff asserts, that the rule that a municipality is not liable for the negligence of any of its municipal officers, agents or employees while engaged in a governmental function or duty has been criticized in several decisions of this court, nevertheless, the Supreme Court of this State firmly adheres to the distinction between acts done in a governmental capacity and acts done in a non-governmental capacity.

It has been frequently stated that the question as to whether a city under a given state of facts acts in a governmental or a non-governmental capacity is not always easy to determine and that all that can be done with safety is to determine each case as it arises. It is entirely unnecessary for us to refer to all of the decisions that are cited by plaintiff and defendant that bear upon the subject. A leading and instructive case is *Roumbos v. City of Chicago,* 332 Ill. 70. There our Supreme Court states the general principles that apply to the subject and cites decisions of that court wherein the municipality was held liable for the negligence of its servants (p. 79) and cases in which the city was held not liable (p. 80). In the *Roumbos* case the evidence showed that (p. 72):

"Marie Roumbos, a little girl four years old, was living with her parents on the second floor of a building

which stood on the north side of Hope street, flush with the sidewalk. She was sitting at the edge of the sidewalk, on the lower step of the stairway leading from the second floor to the street. *A street sweeper in the employ of the city* swept a pile of trash, shown to be about one or two feet high and three feet in circumference, to the curb, about five or six feet from the house, set fire to it and went away. The wind blew the flame across the sidewalk. It caught the child's dress and she was so badly burned that she died the same day." (Italics ours.)

The Supreme Court held that as the care of streets and sidewalks is a part of the corporate functions of the municipality voluntarily assumed by the city the latter was liable to the plaintiff.

In the recent case of *Taylor v. City of Berwyn,* 372 Ill. 124, it appears that two City of Berwyn policemen, in response to a radio broadcast from Chicago to suburban municipalities, were driving a police squad car in pursuit of persons wanted for the murder of a Lombard police officer and in the pursuit they had gone outside of the city limits of said city when they collided with a truck and injured the plaintiff. The Supreme Court held that the police squad car involved in the action was being operated by and under the control of police officers and while the City of Berwyn was in the exercise of a governmental function of the highest character, and also held against the contention of the plaintiff that the operation of an automobile by police officers of one municipality while riding or cruising in another town is not a governmental function. The court states (p. 129): "Manifestly, the operation and maintenance of the police department by a municipal corporation is an exercise of a governmental function so as to relieve it, in the absence of statutory provision to the contrary, from liability for personal injuries resulting from the malfeasance

or nonfeasance of the departmental officers or employees."

Both parties cite *Gebhardt v. Village of LaGrange Park,* 354 Ill. 234. There it appeared (pp. 235, 236) "that the plaintiff in error village, under authority of an act of the legislature, passed an ordinance establishing a playground and recreation board for the village and appointed three members, to serve without compensation. The ordinance gave to the board powers enumerated by the statute, which were, to maintain and equip playgrounds and recreation centers within or beyond the corporate limits of the village, to employ play-leaders, directors, supervisors, recreation superintendents and other officers and employees as the board might deem proper. By amendment the statute conferred on such board the power to provide swimming pools. (Cahill's Stat. 1931, chap. 24, pars. 631-34.) For about six weeks prior to July 14, 1927, the date on which defendant in error was injured, the defendant Charles Smith, by direction of the chairman of the recreation board, had been using the village truck, of which he was the driver, to convey children to and from the Belmont swimming pool, located about eight miles from the plaintiff in error village. On July 14, 1927, owing to the inclemency of the weather, the chief of police directed Smith to use his (Smith's) automobile instead of the village truck to convey the children to and from the swimming pool. On returning that afternoon, while proceeding east on Ogden avenue, a public highway, Smith's car collided with a truck of Marshall Field & Co. and defendant in error was injured." The Supreme Court assumed that the village was operating the swimming pool, that Smith was its agent, that it was through Smith's negligence that the injury to the defendant in error occurred, and that the question before the court was whether the maintenance of the swimming pool was a governmental

or a proprietary function. The court held that the question was one which had not theretofore engaged the attention of the court, and reviewed the authorities of sister states that bore upon the question. In its opinion the court states (pp. 237, 238, 239, 240):

"The principle upon which freedom from liability for damages occasioned by the servants of a municipality is based, rests, in turn, on the fact that the duty of the municipality is owed to the public, and though the neglect causing the injury may prove of damage to the individual affected, the benefit of the discharge of such function to the public generally is deemed an outweighing consideration and so justifies immunity to the municipality. (*Hill v. Boston,* 122 Mass. 344, 23 Am. Rep. 332.) If public parks, playgrounds and swimming pools are examples of municipal functions undertaken for the public benefit as distinguished from their maintenance for corporate profit they must be brought within the rule of governmental immunity. One question, considered in some of the cases as of importance, is whether the duty is imposed on the municipality or is permissive, as one voluntarily assumed. That question is recognized by this court in *Roumbos v. City of Chicago, supra.* It is there also recognized, however, that such question is but one consideration in determining the character of the function discharged by the municipality. Governmental function is to be determined, if it exists, from the nature of the duty to be discharged or the act to be done. If the duty involves a general public benefit not in the nature of a corporate or business undertaking for the corporate benefit and interest of the municipality, the function is governmental whether the duty be directly imposed upon the city or is permissive—that is, one voluntarily assumed. A bathing beach or swimming pool is maintained under powers granted to the city or village and as an instrument for the general public health, recreation and exercise. It is not imposed· on the municipal-

ity but is optional with it. That fact alone, however, may not be said to determine whether in maintaining such swimming pool the municipality acts in a governmental or proprietary capacity. The nature and effect of the function discharged must be examined to determine ·that question. (*Bisbing v. Asbury Park, supra.*) Such function in nowise partakes of the nature of a corporate business or undertaking for profit but is by its nature a public benefit. The municipal purpose in providing such means of recreation and health differs widely from that found in conducting a business enterprise for private gain.

"Among the aims of government are those to foster and promote health, comfort, recreation and sanitary conditions for the public, and unless specifically limited to certain classes of persons or to citizens of the village itself such benefit extends to the public generally. The officers appointed.by the village under the authority of the statute are officers of that municipality charged with the duty to thus promote the general welfare. To attain such an object is one of the primary purposes of government. Such a swimming pool is open to the public. *The fact that a fee is charged for its use does not destroy its character as a public place for recreation and health.* (*Carstens v. City of Wood River,* 344 Ill. 319.) We are of the opinion that not only the weight of authority in this country, but likewise the better reasoning, supports the rule that in the absence of a statute imposing such liability a city or village maintaining a swimming pool is not pecuniarily liable for the negligence of its officers or servants in the discharge of their duties relating to that particular function. Here, by ordinance authorized by the statute referred to, the village of LaGrange Park appointed commissioners to discharge the duties and exercise the powers provided in the act, and when the act was amended so as to empower villages to maintain swimming pools, such additional powers were thereby vested

in the board appointed by the village. Assuming, therefore, as argued by defendant in error, that all acts necessary to be done were done by the board of commissioners appointed by the village concerning the maintenance of a swimming pool, we are of the opinion that in so doing the village was engaged in a governmental and not a proprietary function and that the general rule as to exemption from liability for negligence applies. This being so, the judgment against the village cannot stand.'' (Italics ours.)

Plaintiff cites, as cases where municipalities have been held liable: *Wasilevitsky v. City of Chicago*, 280 Ill. App. 531; *Bedtke v. City of Chicago*, 240 Ill. App. 493; *Schmidt v. City of Chicago*, 284 Ill. App. 570; *Shapiro v. City of Chicago*, 308 Ill. App. 613. In the *Wasilevitsky* case the plaintiff charged negligence of a city employee in operating a garbage trailer. In the *Bedtke* case the plaintiff charged negligence by a city employee in the operation of a street cleaner. The *Schmidt* case is similar to the *Wasilevitsky* case. In the *Shapiro* case the plaintiff charged negligence in that an abandoned automobile was left parked in a city alley and plaintiff, a child, was injured, and it was held that the abandoned automobile constituted an attractive nuisance. The plaintiff, a child, was injured when another child threw a match into the gas tank of the automobile. It was further held that the removal of the car from the alley was strictly a corporate function for which the city would be liable if negligent, it also appearing that the property owner had requested the city to remove the car. No case has been cited by plaintiff that is like the instant one, upon the facts, and the cases cited are readily distinguishable from the instant one upon the facts.

''As was said in 1 Dillon on Municipal Corporations (5th Ed.), Section 109:

'' 'In *its governmental or public character*, the corporation is made, by the state, one of its instruments, or

the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state, rather than for itself.'

"It will not be questioned but that, in establishing and maintaining a police department in a city, such city is acting for the public good, on behalf of the state, rather than for itself. The legislature clothed the city with power to maintain such an organization as a convenient method of exercising a function of government. By this means the state intends to establish and maintain peace, security, health, and the general welfare.

"It is well established in this state that a municipal corporation is not ordinarily liable for the torts of a police officer while in the enforcement of police regulations. . . . Whether a city shall have a police department or what shall be its character and extent is governmental. Members of the police department are not agents and servants of the city in the sense that the city may be liable for wrongs committed by them in the discharge of their duties in that regard." (*Leckliter v. City of Des Moines*, 211 Ia. 251, 257, 259.)

"The police officers of a city are not its agents or servants, and it is not responsible for their negligence. This doctrine is strongly stated by Judge Dillon, and he supports his text by an unbroken array of authorities. 2 Dill. Munic. Corp., sec. 773. If police officers are not the agents or servants of the municipality, then it is legally impossible that for their negligence there should be corporate responsibility.

"It is only upon the rule of *respondeat superior* that corporations are liable for the wrongs of those who are engaged in the conduct of municipal affairs. Judge Dillon says: 'It may be observed, in the next place, that when it is sought to render a municipal corporation liable for the acts of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation.' 2 Dill. Munic. Corp., sec. 772. This consideration marks the distinction between

cases such as the one in hand and actions for injuries caused by obstructions or defects in streets, for officers in charge of streets are, within the scope of their authority, agents of the corporation, and for their acts the municipality is responsible; while officers appointed to execute the laws and ordinances are not agents engaged in corporate duties, but are public officers appointed at the command of the Legislature by the corporate authorities. There is no more reason for holding cities responsible for the wrongs of police officers than there is for holding counties or townships responsible for the torts of sheriffs and constables." (*City of Lafayette v. Timberlake,* 88 Ind. 330, 332, 333.)

We feel impelled to again call attention to the able dissenting opinion in *City of Meridian v. Beeman, supra.*

Plaintiff concedes that the negligence of Pilat occurred while he was engaged in the performance of a governmental function, but she contends that he was at the same time also engaged in the performance of a non-governmental function; that as the squad car was used in the discharge of both functions the City thereby forfeited its right to claim immunity from liability for the negligence of Pilat. After a careful consideration of the question involved upon this appeal we find ourselves unable to agree with plaintiff's position; if it were sustained it would follow, as we have heretofore stated, that if Pilat at the time of the accident were pursuing a felon in the squad car the City could not successfully assert that Pilat was then engaged in governmental duties. In our judgment plaintiff advances a new and far-reaching doctrine,—one that would tend to destroy the old and well-established law that a municipality is not liable for the negligence of police officers while in the performance of governmental duties. If Pilat at the time of the accident was patrolling his beat in the squad car for the sole purpose "of keeping a lookout for defects in the sidewalks, streets, alleys, street lights, sewers and water mains of

the City," or was "removing obstructions upon the streets, alleys and sidewalks of said City," a different question would be presented to us; but we do not intend to intimate that the City, under the facts just assumed, would, in our opinion, lose its right to claim immunity. As observed in the dissenting opinion in *City of Meridian v. Beeman, supra,* such incidental duties are usually performed by police officers in all of the states of the country. But in the instant case Pilat was not patrolling his beat in the squad car, and it must be presumed that in the cleaning of the car he was performing one of his principal or dominant duties, which duties are governmental.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.