[No. 36024.   Department Two.   November 21, 1962.]

JEAN HANDLER et al., *Respondents*, v. STEIG OSMAN et al., *Appellants.**

*McCush & O'Connor,* for appellants Osman et al.

*Reported in 376 P. (2d) 439.

*Hullin, Ehrlichman, Carroll & Roberts,* for appellant Lodge No. 194, B.P.O.E.

*Sam Peach,* for respondents.

FINLEY, C. J.—This is a personal injury lawsuit. The plaintiff, a professional dancer and entertainer, while employed by the Bellingham Elks Club, and performing therein, allegedly sustained a fall and personal injuries which she claims resulted proximately from negligence on the part of the defendant club and its patron, Mr. Osman. The jury found liability and assessed damages in the sum of $3,873 against the defendants. This appeal followed.

Jean Handler (known professionally as Jean Shannon) and two male dancers were employed by the Bellingham Elks Club to perform a singing and dancing act on November 6 and 7, 1958. On the afternoon before performance of the act, Mrs. Handler visited the Elks Club room to acquaint herself with the stage area and the location of a small room in which she was to make quick costume changes during the act. The "stage," normally the dance floor of the club, is approximately 20 by 20 feet. The Elks Club room in which the act was performed is approximately 60 feet wide, and the performers had access to the stage by means of an aisleway between the tables and booths along one wall.

Defendants Steig Osman and his wife, Virginia, were seated with friends in one of the booths situated alongside the aforementioned aisleway. Because of the location of the booth, the Osmans were seated with their backs to the "stage." It was necessary for them to turn in order to watch the entertainment on the "stage." When Steig Osman turned to view the entertainment, he extended his legs into the aisleway, partially obstructing it. The evidence indicated that the width of the aisleway varied from 2 to 5 feet during the course of the evening, depending upon where the audience was seated at the tables alongside the aisleway.

In the course of the performance of her act, Jean Handler had to use the aisleway to make quick costume changes

off-stage in a small room. She encountered no obstructions in the aisleway during the first performance of her act. However, later in the evening, near the end of her second 30-minute act, while making some quick "comedy exits," she encountered Steig Osman's feet in the aisle. During the first of these exits, she stumbled over Osman's feet, but did not fall. This happened again on her second exit. It was disputed as to whether she then requested Osman to remove his feet from the aisle. While making her third exit, which was within a few minutes of the first, she tripped over the feet of Steig Osman and fell, sustaining the injuries for which the jury awarded damages to her in the trial court.

The theory for recovery against the Osmans was that Steig Osman was either negligent in extending his feet in the aisleway or negligent in his failure to remove his feet from obstructing the pathway of the plaintiff. Recovery of damages from the Elks Club was based upon the theory that it was negligent in failing to provide a safe place to work. The more specific allegation of negligence was that the club (due to the seating arrangement of the audience) failed to provide a safe passageway for the use of Jean Handler in the performance of her act. Recovery against the Elks Club was not on the basis of imputing the negligence of the patron, Steig Osman, to the proprietor.

■ Both defendants have assigned error to the trial court's refusal to grant an unavoidable accident instruction. In support of their requested instruction appellants have cited *O'Connell v. Home Oil Co.* (1935), 180 Wash. 461, 40 P. (2d) 991. That case, as well as *Schultz v. Cheney School Dist.*, 59 Wn. (2d) 845, 371 P. (2d) 59, involved an affirmance of a trial court for having granted an unavoidable accident instruction. In the recent case of *Cooper v. Pay-N-Save Drugs*, 59 Wn. (2d) 829, 371 P. (2d) 43, the trial court was reversed for having given an unavoidable accident instruction, and the opinion states:

"This court has never reversed a trial court for refusing to give a defendant's requested instruction on unavoidable accident.

"Since this court has not, to this date, regarded a refusal to give the unavoidable-accident instruction as reversible error and has on at least three occasions (*Brewer v. Berner, supra;* [ (1942), 15 Wn. (2d) 644, 131 P. (2d) 940] *Pakka v. Fitzpatrick, supra;* [ (1959), 53 Wn. (2d) 356, 333 P. (2d) 917] *Van Ry v. Montgomery, supra* [ (1961), 58 Wn. (2d) 46, 360 P. (2d) 573]) held it error to give the instruction, it would appear better practice to omit it except in those instances in which, quite plainly, it is peculiarly appropriate."

In the present case there was not any evidence presented to show that the accident was in fact unavoidable. Furthermore, although the request for a specific unavoidable-accident instruction was denied, the theory of an unavoidable accident was in effect placed before the jury in general terms by an instruction which began with the statement: "A party is not entitled to recover solely because there has been an accident." We are not persuaded that the requested instruction on unavoidable accident was so peculiarly appropriate as to warrant a deviation from the general rule set forth in the above quotation from *Cooper v. Pay-N-Save Drugs, supra.*

The defendant Elks Club has assigned error to the refusal of the trial judge to grant its requested assumption-of-the-risk instruction. We find no merit in this assignment of error, because (1) an assumption-of-the-risk instruction was submitted to the jury in the instant case; and (2) the assignment of error has been rendered moot by the recent case of *Siragusa v. Swedish Hospital* (1962), *ante* p. 310, 373 P. (2d) 767, wherein this court has eleminated the doctrine of assumption of risk, regarding employer-employee relationships, from the jurisprudence of this state. In this connection it should be noted that the *Siragusa* decision was filed after the instant case was argued in this court.

■ The trial court refused to grant a "volenti non fit injuria" instruction requested by the Osmans, and error has been assigned to that refusal. A "volenti" instruction could be considered only with reference to the question of Osman's liability and not that of the employer, Elks Club,

because it is applicable only to voluntary relations other than those of employer and employee. *Walsh v. West Coast Coal Mines* (1948), 31 Wn. (2d) 396, 408, 197 P. (2d) 233. In ascertaining whether a volenti instruction is appropriate, it is necessary to ask two questions:

". . . . Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it ('voluntarily' including the meaning that defendant's conduct has left plaintiff a reasonable election or alternative. . . . )" *Kingwell v. Hart* (1954), 45 Wn. (2d) 401, 405, 275 P. (2d) 431.

█ It is necessary that both questions be answered affirmatively to establish the defense of volenti. *Anderson v. Rohde* (1955), 46 Wn. (2d) 89, 278 P. (2d) 380, refers to volenti as involving the taking of a calculated risk. In the present case Steig Osman's conduct did not present Jean Handler with a reasonable election or alternative. The completion of her act necessitated her continued use of the aisleway for the quick series of "comedy exits." Thus, there was a lack of the prerequisite voluntary consent required for a volenti instruction. The trial judge properly refused the proposed instruction.

█ Both defendants have assigned error to the trial judge's refusal to grant a motion for dismissal, directed verdict, or a judgment n.o.v. For the purposes of these motions the evidence and the inferences that can be reasonably drawn therefrom are to be interpreted most favorably to the nonmoving party. *Smith v. Laughlin* (1958), 51 Wn. (2d) 740, 321 P. (2d) 907; *Williams v. Hofer* (1948), 30 Wn. (2d) 253, 191 P. (2d) 306. The record clearly indicates that there was sufficient evidence to submit the question of liability to the jury as to both defendants.

█ During the summation to the jury, the plaintiff's attorney stated: "How could you put your foot out and laugh if you weren't trying to trip?" The defendants' counsel objected on the ground that there was no pleading that this was an intentional tripping. The trial court then asked the plaintiffs' attorney: "Is it your intention that this

amounted to an assault, or are your pleadings based upon negligence?" And he answered: "Your Honor, my pleadings are based on negligence." The jury was then excused, and counsel presented their arguments to the court. Defendants' counsel requested the court to admonish the jury to disregard the original statement, and error has been assigned to the court's refusal to admonish. We are persuaded that the exchange between the trial judge and plaintiffs' attorney, following the objection of defense counsel, constitutes an exercise of sound judicial discretion by the trial judge and was sufficient to correct or to put in proper perspective the statement which otherwise might have introduced prejudicial error.

The judgment of the trial court is affirmed.

DONWORTH, OTT, HUNTER, and HAMILTON, JJ., concur.

