[No. 45-40295-1.   Division One.   December 31, 1969.]
Panel 2

MARVIN J. GABEL *et. al., Respondents*, v. FRED KOBA *et al., Appellants.*

686

*Clarke, Clarke, Albertson & Bovingdon* and *George H. Bovingdon,* for appellants.

*Cushman, Thomas & Holt* and *R. M. Holt,* for respondents.

UTTER, J.—Plaintiff Josephine Dominick brought a wrongful death action against defendants to recover for the death of her 4-year-old son who died of injuries suffered in a fire on defendants' farm. The wrongful death action was joined with claims for personal injuries suffered by Marvin Gabel in a previous accident and for the cost of food supplied by plaintiff to defendants' dog. Defendants, hereinafter referred to as Koba, appeal from a jury verdict on all three claims in favor of plaintiffs.

The principal issues in the death action are (1) did the trial court err, as a matter of law, by submitting to the jury the question of whether Ronald Gabel was a business invitee, and (2) did the trial court err, as a matter of law, by submitting to the jury the question of whether an abandoned truck on Koba's farm constituted an attractive nuisance.

In determining whether the trial court erred in submitting these issues to the jury, Koba admits the truth of plaintiff's evidence and all inferences that can reasonably be drawn therefrom. The evidence must be interpreted most strongly against Koba and in a light most favorable to plaintiff. *Beck v. E. I. Du Pont De Nemours & Co.,* 76 Wn.2d 95, 455 P.2d 587 (1969).

Marvin Gabel was employed by Koba on Koba's farm near Fall City, Washington. Gabel lived on the farm with Josephine Dominick and their children in a house furnished

by defendant. On January 1, 1966, Ronald Gabel and Ralph Dominick, Josephine Dominick's 12-year-old brother, were playing on an abandoned truck on Koba's farm. A match was lit near the truck's gas tanks, resulting in a fire and explosion. The Gabel boy died of burns. The truck had not been used by Koba since 1963 but gasoline had been put in its tank in August of 1964. The vehicle was not parked with other vehicles in use but was by itself near the county road. Koba had warned plaintiffs to keep their children away from places of danger on the farm.

Josephine Dominick and Marvin Gabel, although the parents of Ronald Gabel, were not married. The court indicated that if the jury found Josephine Dominick to be guilty of contributory negligence which was a proximate cause of the death of her child, she could not recover. Marvin Gabel could not share in an award for his son's death, if the jury found for the plaintiff Josephine Dominick, and his contributory negligence, if any, would not affect Josephine Dominick's right to recover. Koba apparently was not aware of the fact they were not married until the time of trial and had assumed that if Marvin Gabel was contributorially negligent, this would also bar recovery of Josephine Dominick as his supposedly legal wife. Koba claims that he was improperly deprived of a defense due to the deception practiced by the plaintiffs and assigns error to the court's instruction.

■ The court did not err. Koba proceeded with the trial of the case without objection after he was aware of the true state of the facts. By doing so he waived any objection he may have had. *Seth v. Department of Labor & Indus.*, 21 Wn.2d 691, 152 P.2d 976 (1944).

The case was submitted to the jury on two alternate theories. One theory contended Ronald Gabel was a business invitee. In the event the jury did not find he was an invitee, then it was to consider whether the truck was an attractive nuisance.

■ There was evidence from which the jury could find the terms of Marvin Gabel's employment made it necessary

for his children to live on the farm and that the children were invited to live on the premises. If the jury found Ronald Gabel was expected to live with his mother and father on the Koba farm, they were entitled to consider whether they were expressly or impliedly invited onto the farm for a purpose connected with a business interest or business benefit to Koba. If this was found, the jury then was properly instructed Koba owed invitees a duty to exercise ordinary care for their safety which included the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises which they were expressly or impliedly invited to use or which they might reasonably be expected to use. *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 414 P.2d 773 (1966).

▮ Koba maintains he discharged his duty to exercise ordinary care by his warning. Does giving a warning to parents discharge the duty to exercise ordinary care, as a matter of law, where children are in the group classified as invitees? The primary legal responsibility for the protection of young children rests on their parents. *Mail v. M. R. Smith Lumber & Shingle Co.*, 47 Wn.2d 447, 287 P.2d 877 (1955). However, as noted in W. Prosser, Law of Torts § 59 (3d ed. 1964):

> While it is true that his parents or guardians are charged with the duty of looking out for him, it is obviously neither customary nor practicable for them to follow him around with a keeper, or chain him to a bedpost.

▮ In determining whether a warning to parents is sufficient, as a matter of law, to discharge the duty to use ordinary care, it would seem a jury should consider whether a landowner can be oblivious to the impossibility of even the most conscientious parents to control the conduct of their minor children at all times.

Another element to be considered by the jury in determining whether ordinary care was exercised by the landowner is the necessity for the condition created when compared to the expense, difficulty and ability of guarding against any risk it poses to others. *Brown v. Intercoastal*

*Fisheries,* 34 Wn.2d 48, 207 P.2d 1205 (1949). The jury would be entitled to determine whether there is a necessity for keeping gasoline in a truck which was no longer used and weigh this against the difficulty and expense involved in draining the gas tank. In light of these considerations the determination of whether an oral warning to the mother constituted ordinary care is a question for the jury.

█ Koba asserts the warning to the mother and her subsequent failure to keep her child away from the scene of the accident constituted negligence as a matter of law on her part. The mother did not deny the warnings and indicated she knew the children should stay away from places where they could be hurt, and had taken measures to see they did and instructed them to stay in the yard. No authority has been cited which would indicate the failure of the mother to keep the child within her yard is contributory negligence, as a matter of law. The question of the mother's contributory negligence presented a factual question for the jury.

█ Koba contends the attractive nuisance issue should not have been submitted to the jury. Those factors necessary to constitute an attractive nuisance are set out in *Schock v. Ringling Bros. & Barnum & Bailey Combined Shows,* 5 Wn.2d 599, 105 P.2d 838 (1940). To make the doctrine applicable, the following elements must be present: (1) the instrumentality or condition must be dangerous in itself, that is, it must be an agency which is likely to, or probably will, result in injury to those attracted by, and coming into contact with, it; (2) it must be attractive and alluring, or enticing, to young children; (3) the children must have been incapable, by reason of their youth, of comprehending the danger involved; (4) the instrumentality or condition must have been left unguarded and exposed at a place where children of tender years are accustomed to resort, or where it is reasonably to be expected that they will resort, for play or amusement, or for the gratification of youthful curiosity; and (5) it must have

been reasonably practicable and feasible either to prevent access to the instrumentality or condition, or else to render it innocuous, without obstructing any reasonable purpose or use for which it was intended.

Viewing the facts in a light most favorable to the mother, the jury was entitled to find there was gasoline in the gas tank at the time of the accident.

█ There is a conflict of authority on the question of whether an abandoned automobile with gas in its tank is, as a matter of law, an instrumentality or condition which is dangerous in itself, that is, one which is likely to, or probably will, result in injury to those attracted by and coming into contact with it. The cases of *Shapiro v. Chicago*, 308 Ill. App. 613, 32 N.E.2d 338 (1941) and *Parnell v. Holland Furnace Co.*, 234 App. Div. 567, 256 N.Y.S. 323 (1932) hold this is a matter to be submitted to the jury as a question of fact. *Hornsby v. Henry*, 68 Ga. 171, 22 S.E.2d 326 (1942) holds to the contrary. We agree with those cases holding this is a question of fact for the jury. The question of the danger and degree of allurement to small children must be determined by looking at the particular instrumentality or condition involved when placed in the setting of the fact situation in each individual case. Each case presents a unique fact pattern, and other cases involving different children and different factual circumstances have little persuasive authority in this field.

The jury was entitled to find: an abandoned truck can attract children as if it were a playground inasmuch as it offers places to hide, heights to climb and dark corners to explore; a truck which is not moved for 2 years and has served as a playground previously for children might not appear dangerous to a child; the boys could have reasonably been found too young to appreciate the danger of gasoline in an uncapped tank; the truck was in an area where children played and near homes where children lived; it would not have been difficult to drain the truck's gas tank once Koba decided to abandon it and the truck was no longer driven and there was no longer a necessity to keep

gasoline in the tank. There were ample facts from which the jury could have determined the necessary elements in *Schock* were present.

For the reasons stated we cannot say, as a matter of law, there were not facts sufficient to allow the attractive nuisance theory to be submitted to the jury. Our cases of *Brannon v. Harmon,* 56 Wn.2d 826, 355 P.2d 792 (1960) and *Mathis v. Swanson,* 68 Wn.2d 424, 413 P.2d 662 (1966) are illustrative of the fact that the application of the law of attractive nuisance to the facts in the individual case is a treacherous area for the court to make its determination, as a matter of law, that the doctrine of attractive nuisance does not apply.

■ Koba assigns error to the court's failure to give numerous instructions which would have called the jury's attention to specific factual situations in the case and the manner in which these factual situations applied to the law governing the case. This problem is commented on in WPI p. xiii where, in the preface, the authors stated:

> The Committee took the view that the trial court is under no obligation to buttress all jury arguments with supporting instructions nor to give the numerous proposed instructions which approach the problem piecemeal for emphasis. The trial court's task is to give to the jury brief and unslanted statements of the law to the extent necessary to present fairly each litigant's theory of the case.

Illustrative of the problem presented is defendant's instruction No. 8 which would have highlighted the argument that the negligent conduct of the defendant, if any, was a condition acted upon in an affirmative way by another agency but not a proximate cause of the death of Ronald Gabel. The court properly instructed the jury on the necessity for them to find proximate cause and this allowed counsel to argue his theory based on the proximate cause instruction. We have examined the other instructions offered by the defendant which were not given by the trial court and find in each case counsel was able to argue his

theory of the law based on brief, unslanted statements of the law given by the court to the jury.

Koba asserts the trial court erred in refusing to allow him to impeach the brother of Josephine Dominick whom he called as his own witness by introducing a claimed inconsistent written statement. CR 43(b) provides:

> A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party.

The rule delineates two separate categories: (1) a hostile witness and (2) an adverse party or a person in a specific relationship to the adverse party.

The only time a witness called by a party may be impeached in *all* respects as if that witness had been called by an adverse party is where that witness is an adverse party or an officer, director or managing agent of a public or private corporation or partnership or association which is an adverse party. *Isaacs v. National Bank of Commerce* 50 Wn.2d 548, 313 P.2d 684 (1957). Ralph Dominick did not fall within these classifications which would have allowed Koba to impeach him by a prior inconsistent statement after calling him as his own witness.

One's own witness may be impeached by prior inconsistent statements, even if he is not within CR 43(b), where the party calling the witness is surprised by the testimony to which the inconsistent statements relate and the testimony prejudices the party. *State v. Thomas,* 1 Wn.2d 298, 95 P.2d 1036 (1939). There was no showing of surprise made by Koba which would have permitted impeachment under this test.

The trial court sustained plaintiff's objection to Koba's offered testimony that no other child had been injured on Koba's place or upon his machinery.

■ Introduction of lack of accidents may be relevant and admissible if sufficient evidence of use of premises, as well as use under similar circumstances are shown. 5 Meisenholder, Wash. Prac. § 5 (1965). The trial court properly rejected the offered testimony as it included lack of accidents on all equipment on the farm, not just the truck, and therefore related to many factors which were not similar to the facts in this case.

The action for personal injuries to Gabel's hand was presented to the jury on conflicting evidence and proper instructions. The assumption of risk instruction in master-servant cases requested by defendant would be improper to give in the light of our cases of *Handler v. Osman,* 60 Wn.2d 800, 376 P.2d 439 (1962) and *Miller v. St. Regis Paper Co.,* 60 Wn.2d 484, 374 P.2d 675 (1962). The claim for reimbursement for the cost of dog food was likewise properly submitted to the jury on conflicting evidence.

■ Koba correctly challenges the action of the trial court in awarding as costs to Gabel the costs of the discovery deposition of Koba. Neither RCW 4.84.090 nor CR 26 authorize taxing, as costs, expenses incurred in taking the deposition of a party "for the purpose of preparing for the trial of the pending action, or in ascertaining his rights for his own benefit." *Platts v. Arney,* 46 Wn.2d 122, 278 P.2d 657 (1955) and *Arnesen v. Rowe,* 46 Wn.2d 718, 284 P.2d 329 (1955). They are disallowed inasmuch as at the time RCW 4.84.090 authorizing taxing "the necessary expenses of taking depositions" was enacted, a pretrial discovery deposition of either an adverse party or witness could not be taken. Taxing of costs is a matter of statutory regulation. *Victor Products Corp. v. Edwards,* 172 Wash. 1, 18 P.2d 1045 (1933); *Kenworthy v. Kleinberg,* 182 Wash. 425, 47 P.2d 825 (1935).

The court did allow costs of a party's deposition to be taxed in *Prince Hall Lodge v. Universal Lodge,* 62 Wn.2d 28, 381 P.2d 130 (1963). In that case defendant died prior to trial and portions of his deposition taken before the trial

694

were offered into evidence. Inasmuch as the deposition was introduced into evidence as a result of the defendant's death, the court presumed it was taken for the purpose of introduction into evidence, not as a discovery deposition. Costs are allowable under the statute for depositions taken for the purpose of introduction into evidence and the court therefore allowed costs. The deposition in this case is labeled a discovery deposition by plaintiff and was taken as such and therefore costs are not allowable.

The judgment of the trial court is affirmed except that portion which awards costs to plaintiff for the defendant Koba's deposition.

HOROWITZ, A. C. J., and STAFFORD, J., concur.