[No. 80-41321-3.   Division Three.   November 24, 1970.]

CHARLES MCGLOTHLIN et al., *Appellants*, v. RONNIE COLE
et al., *Respondents*.

*Velikanje, Moore, Countryman & Shore* and *Dudley N. Perrine*, for appellants.

*Donald H. Bond* (of *Halverson, Applegate, McDonald, Bond & Grahn*), for respondents.

GREEN, J.—Plaintiff, Doris McGlothlin, who sustained personal injuries in an auto accident, joined with her husband, Charles, in bringing this action for damages against Ronnie and Sylvia Cole, defendants. From an adverse verdict, plaintiffs appeal.

The accident occurred about 3:45 p.m. on June 2, 1962 between Sunnyside and Grandview. Although there was a slight drizzle or sprinkling of rain, visibility and road conditions were good. Charles McGlothlin was driving his father-in-law's car on U. S. Highway 410 toward Grandview approaching its intersection with Woodworth Road. Plaintiff Doris McGlothlin and her stepfather, Earl Janes, were passengers in the car. U. S. Highway 410 is a paved, 2-lane highway; the speed limit is 50 miles per hour. Woodworth

Road is a graveled road intersecting U. S. Highway 410 on a diagonal. McGlothlin intended to turn left into Woodworth Road. The evidence surrounding the accident is in conflict.

McGlothlin testified he was driving between 45 and 50 miles per hour. When he was 200 feet from the intersection of Woodworth Road, he looked in his rear-view mirror and saw defendants' car a block behind him. At this point, he turned on his left-turn signal, began slowing his speed to 10 to 15 miles per hour and without looking again turned left into Woodworth Road. At the time he made the turn, he had no idea of the location of defendants' car. When his front wheels were on the graveled portion of Woodworth Road and the rear wheels on the paved portion of the highway, the defendants' car struck the rear of his car whirling it around in the gravel. When the car came to rest in Woodworth Road, he observed defendants' car stopped on the right side of U. S. Highway 410, facing toward Grandview.

McGlothlin stated a patrolman tested his stop lights and turn signal following the accident and they would not function. He stated they did work prior to the accident, but due to the collision the wires were so mashed and twisted the lights would not function. McGlothlin also testified the officer could not make the signal lights work because there was no key in the ignition.

A conversation took place between McGlothlin and the defendant Sylvia Cole following the accident. McGlothlin testified Mrs. Cole told him that when she saw he was going to turn, she hit her brakes and they wouldn't hold, throwing her into the gravel on the right shoulder of the highway thereby causing her to lose control of the car and she tried to follow him into Woodworth Road. McGlothlin also claimed they found where the gravel on the shoulder was scuffed up. All of this testimony was denied by Mrs. Cole. McGlothlin also testified he never heard a horn.

The defendant, Sylvia Cole, testified she was on her way to Grandview from Sunnyside. She passed another automo-

bile and first observed McGlothlin's car a block and a half or two blocks from Woodworth Road. She followed the McGlothlin car at a speed of 40 to 45 miles per hour until she was 45 to 50 feet (a couple of car lengths) from Woodworth Road. She blew her horn, turned on her signal lights and started to pass. When she was about even with the rear of the McGlothlin car, he turned in front of her. She stepped on her brakes, tried to turn into the other lane of traffic to avoid collision, but was too close and struck the rear of the McGlothlin car. The front end of defendants' car was damaged. Mrs. Cole also testified she speeded up to pass and was traveling 50 to 55 miles per hour at the time McGlothlin suddenly turned in front of her. At no time did she see any brake or signal lights on the McGlothlin car. She stopped her car on the right side of the road after the impact which occurred in the middle of the passing lane.

Plaintiffs assign error to the court's giving of instruction No. 14:

Under the law of the State of Washington, plaintiff Charles McGlothlin had a duty to observe traffic to his rear immediately before making his left turn.

The court instructs you that under the facts at bar the plaintiff driver, Charles McGlothlin, violated said duty and was accordingly guilty of negligence as a matter of law.

If you find from a fair preponderance of the evidence that this violation on the part of Charles McGlothlin was a proximate cause of the collision, then your verdict shall be for the defendants.

This instruction was based upon *Niven v. MacDonald*, 72 Wn.2d 93, 431 P.2d 724 (1967), which had just been decided. *Niven* was interpreted to mean that a driver who failed to look to the rear within the last 200 feet prior to making a left turn was negligent as a matter of law if it was a proximate cause of the accident. Underlying this conclusion was the trial judge's belief the duty to look required in *Niven* applied not only to the discovery of cars in the passing lane, but also to the discovery of following cars. Plaintiff contends Mrs. Cole's vehicle was a following

car because of her alleged statement to McGlothlin after the accident. Therefore, it is argued since *Niven* involved only a *passing* car, the trial court's instruction was too broad because it required McGlothlin as a matter of law to look to the rear and discover any car, including a *following* car, in his same lane of travel. We agree.

In *Niven,* the court construed RCW 46.61.305(1) reading, in pertinent part, as follows:

> No person shall turn a vehicle . . . to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

*Niven* involved a left turn into a private driveway. The driver testified she had looked in her rear-vision mirror at an earlier time and saw a car following her at a safe distance and then just before turning (estimated at 2 to 5 seconds) she looked again and saw no car. As she made her left turn, a passing vehicle struck her. It was urged to the trial court that what constituted "reasonable safety" was a question for the jury and not the court. This argument was rejected on the basis that if the driver had looked immediately prior to turning, she would have seen the overtaking vehicle that was there to be seen in the passing lane. On appeal, the same position was urged again and rejected, the Supreme Court stating, at pages 99-100:

> There was substantial uncontroverted evidence to support the trial court's statement that had the plaintiff "looked immediately prior to her making this turn, she would have seen an overtaking vehicle." The MacDonald car was in the passing lane continuously while passing the three cars which were following the plaintiff. The plaintiff had a clear and unobstructed view of the westbound lane behind her (the passing lane) for a quarter of a mile. The drivers of two of the following cars saw and heard the oncoming MacDonald car prior to the collision. . . . Nothing occurred to confuse, deceive, or distract the plaintiff.
>
> . . .
>
> . . . Reasonable minds cannot differ on the proposi-

tion that *had the plaintiff looked for possible traffic in the passing lane immediately before she started her left turn* across it, she would have seen the oncoming Mac-Donald car which necessarily was in that lane an appreciable time before the plaintiff started her left turn. . . . Either she looked so long before she began her turn that the look was completely ineffective for the purpose intended, or she did not see what was there to be seen.

(Italics ours.) Accordingly, the left-turning driver was held negligent as a matter of law.

In *Hurst v. Struthers*, 1 Wn. App. 935, 465 P.2d 416 (1970), a left-turning driver was held negligent as a matter of law, where it was clear he failed to look to the rear immediately before turning and was struck by a car that left 21 feet of skid marks in the passing lane. This and other evidence left uncontroverted the presence of the car which was there to be seen in the passing lane had the left-turning driver looked immediately before making the turn.

■ A driver making a left turn on the highway becomes a disfavored driver as to traffic approaching or passing in the opposite lane. This is made clear in RCW 46.61.305(1) when it states, "No person shall *turn* a vehicle . . . until such movement can be made with reasonable safety." (Italics ours.) Both *Niven* and *Hurst* applied this statute to passing cars in the passing lane in keeping with the statutory requirement. We believe the instruction given by the trial court was too broad in that it applied RCW 46.61.305(1) to following cars. We do not believe this was the intent of the legislature when it enacted the statute, nor the intent of the Supreme Court in its ruling in *Niven*.

■ In this case there is a conflict in the testimony as to whether the defendants' car was a following car or a passing car. In this situation, the jury should have been instructed in the alternative as to the duties imposed under RCW 46.61.305(1) and *Niven,* and as it was in this case, the duties imposed under the following-car doctrine. The left-turning driver should be held negligent as a matter of law

*only* when reasonable minds cannot differ on the proposition that had the left-turning driver looked for possible traffic in the passing lane immediately before starting the left turn across it, he would have seen the passing car which necessarily was in that lane before the driver started the left turn. In such situation the left turn could not be made with reasonable safety. *Niven v. MacDonald, supra; Hurst v. Struthers, supra.* When reasonable minds can differ on this proposition, the issue of negligence is for the trier of fact. *Rae v. Konopaski,* 2 Wn. App. 92, 467 P.2d 375 (1970).

Judgment is reversed and the cause remanded for new trial in accordance with this opinion.

Evans, C. J., and Munson, J., concur.

Petition for rehearing denied January 8, 1971.