[No. 28894-0-II.   Division Two.   April 14, 2004.]

BRANDON F. MARTINI, *Appellant*, v. THE STATE OF WASHINGTON, ET AL., *Respondents*.

---

[22] *Cf. Hepton*, 113 Wn. App. at 681-83.

152

*Keith L. Kessler* and *Garth L. Jones* (of *Stritmatter Kessler Whelan Withey Coluccio*), for appellant.

*Jerret E. Sale* and *Deborah L. Carstens* (of *Bullivant Houser Bailey, P.C.*) and *Francis S. Floyd* and *Kim C. Pflueger* (of *Floyd & Pflueger, P.S.*), for respondents.

MORGAN, J. — Brandon F. Martini sued the State of Washington, Lakeside Industries, and Walsh Brothers Trucking, Inc., for injuries sustained when his car rear-

ended Walsh's truck near a construction zone on I-5. The questions on appeal are (1) whether the trial court properly granted summary judgment to Walsh; (2) whether, given that the State was named as a defendant, the trial court properly denied Martini's challenge for cause to a juror employed by the State; (3) whether the trial court properly admitted evidence showing an absence of other accidents on the same night; and (4) whether the trial court properly instructed on the duty of a following driver. Answering no to the first and second questions, we reverse and remand.

In early August 1997, the Washington State Department of Transportation (WSDOT) and a private contractor, Lakeside Industries, were repaving the two northbound lanes of I-5, a few miles south of Olympia. At the times material here, the work required that the two lanes merge into one. The normal speed limit for cars was 70 miles per hour.

At least four signs were posted in an effort to warn northbound drivers.[1] The first, southernmost sign was at milepost 87.55. It stated: (1) "WORK ZONE NEXT 8 MILES," and (2) "Give 'em a BRAKE."[2] The second sign, north of the first, was at milepost 88.78. It stated: "FOR INFORMATION ABOUT THIS PROJECT" and displayed a phone number.[3] The third sign, north of the second, was at milepost 90.18. Portable and electronic, it alternately flashed: "(1) MAYTOWN EXIT CLOSED, (2) USE Exit 99."[4] The fourth, northernmost sign was at milepost 91.64. Also portable and electronic, it alternately flashed: "(1) PAVING IN PROGRESS, (2) WORKERS ON ROADWAY."[5] It is disputed whether traffic consistently backed up past these signs.

---

[1] More signs were located farther north. We omit them here because the record shows that Martini did not reach them.

[2] Clerk's Papers (CP) at 66; *see also* CP at 61.

[3] CP at 76-77.

[4] CP at 120; *see also* CP at 62, 73.

[5] CP at 120, *see also* CP at 73.

Around midnight on August 8-9, 1997, Thomas Stewart was driving a long-haul truck owned by Walsh. He was northbound in the right lane of I-5 traveling at about 60 miles per hour. His truck was equipped with brake lights, as well as with lights that framed the back of his trailer. He knew about the paving project because he had recently driven through the area.

As Stewart approached the repaving project, he moved into the left lane. Thirty or forty vehicles had backed up, so he began downshifting and braking. He had "slowed down to where [he] was actually going maybe 3 miles an hour"— "just barely rolling, not enough to where [his] indicator would hardly even indicate"[6]—when he felt an "explosion"[7] at the back of the truck. After stopping and activating his four-way (hazard) flashers, he got out and ran to the back of his truck, where he found a Volkswagen Corrado wedged underneath. The driver was injured but still alive.

Martini was driving the Volkswagen. He was headed home to Olympia after visiting friends in Rochester. He entered northbound I-5 at milepost 88.5, north of the first sign but south of the second. He hit the truck about 164 feet south of the fourth (northernmost) sign. He sustained brain damage, so he lacks memory of that night.

On May 10, 1999, Martini sued the State, Lakeside, and Walsh.[8] He alleged that the State and Lakeside were liable because they had negligently warned northbound drivers. He alleged that Walsh was liable because Stewart, its employee, had negligently operated his truck "at an extremely slow speed in the darkness without engaging the truck's four-way emergency flashers, and without otherwise warning the Plaintiff and other motorists of the hazard of the truck's slow movement."[9]

---

[6] CP at 41.

[7] CP at 42.

[8] Martini also sued Stewart, who was dismissed before trial. That ruling is not in issue here.

[9] CP at 2259.

Before trial, Walsh moved for summary judgment. Martini responded that Stewart had breached his common law duty of ordinary care by not activating his four-way flashers while slowing to about three miles per hour in the fast lane of I-5. The trial court granted the motion on the ground that Stewart did not owe Martini a legal duty.

Before trial, Martini moved in limine to exclude evidence designed to show the absence of other accidents near the repaving project. The trial court denied the motion with respect to the night of August 8-9, 1997, but granted it with respect to all other times.

Before trial, Martini moved to exclude state employees from the jury. He relied on RCW 4.44.180(2),[10] which implies bias on the part of anyone "in the employment for wages[ ] of the adverse party." The trial court denied the motion.

A first trial ended with a hung jury. A second trial was held in April 2002. During jury selection, Martini challenged for cause a state employee named Johnston.[11] Relying on RCW 4.44.180(2), he claimed she was impliedly biased because she was employed by the State and the State was an adverse party. The trial court denied the challenge, Martini used his peremptory challenges on other prospective jurors, and Johnston was seated as a juror in the case.

During the evidential phase of the second trial, the State and Lakeside introduced testimony from one of Lakeside's on-site supervisors that there had been no other accidents on the night of August 8-9, 1997. Defense counsel asked, "[W]ere there any other accidents on the evening of August

---

[10] The legislature amended RCW 4.44.180(2) in 2003. LAWS OF 2003, ch. 406, § 7 (effective July 27, 2003). The amendment does not apply to the trial we are reviewing here, which was held in April 2002. Except when expressly stated otherwise, all references to RCW 4.44.180(2) are to the version in effect in April 2002.

[11] Johnston worked in the Office of the Code Reviser.

9, 1997, other than Mr. Martini?," and the supervisor answered, "No."[12]

At the end of evidence, the State and Lakeside sought a jury instruction on the duty of a following driver. After overruling Martini's objection, the trial court gave the requested instruction.

Martini appeals from a judgment based in part on the summary judgment for Walsh and in part on the verdict of the second jury. As to Walsh, Martini claims that the trial court erred by granting summary judgment. As to the State and Lakeside, Martini claims that the trial court erred by denying his challenge of Johnston for cause; by admitting evidence that showed a lack of other accidents; and by instructing on the duty of a following driver. We discuss Walsh first.

I

Martini contends that the trial court erred by granting Walsh's motion for summary judgment. Given that we are reviewing a summary judgment, we take the record in the light most favorable to Martini.[13] The record includes testimony from Stewart and a truck-driving instructor named Ward Ohl, as well as excerpts from the *Washington State Commercial Driver's Guide* (Guide).[14]

As noted above, Stewart testified that he slowed as he approached the construction project. He alternately braked and downshifted, staying about 25-30 feet behind the car in front of him. He did not put on his four-way flashers, believing they were only for emergencies. He had slowed to about three miles per hour when he was hit from the rear.

---

[12] 2 Report of Proceedings (RP) (Apr. 2, 2002) at 358.

[13] *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995); *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Shepard v. Mielke*, 75 Wn. App. 201, 204, 877 P.2d 220 (1994).

[14] DEP'T OF LICENSING, WASHINGTON STATE COMMERCIAL DRIVER'S GUIDE (1997). The record contains other evidence also. For present purposes, however, we are interested only in the minimum needed to show the existence of an issue of fact.

He "immediately put on [his] 4-way blinkers, checked [his] mirrors again to make sure there was no traffic around, and then got out of the truck and ran to the back to see what had happened."[15]

Ohl testified that he teaches defensive driving for commercial trucking companies. He opined that

> any time a truck slows down, and especially to a crawl on a freeway or in a traffic lane, they need to communicate to the traffic behind them, around them, with their four-way flashers that traffic is slow or stopped or there is an emergency. They call them emergency or hazard lights.
>
> . . . .
>
> . . . In my opinion any time other than normal travel, city travel—any time a truck is down below 10 to 15 miles an hour below the speed limit, they need to have their four-way flashers or their hazard lights on. I'm sure everyone has seen trucks climbing hills very slow with their four-ways on. That's to communicate to people behind them that they are traveling at a very low rate of speed.[16]

Applying his opinion here, he concluded that Stewart "needed to have his four-way flashers on as he was slowing down."[17]

The *Washington State Commercial Driver's Guide* advised truckers to use their four-way flashers when driving

---

[15] CP at 42.

[16] CP at 293. Walsh claims that the trial court erred by not striking Ohl's testimony, which it characterizes as "an improper opinion regarding the law." Br. of Walsh at 30. In our view, however, the trial court properly admitted Ohl's testimony as expert opinion on the standard of care. In addition, the trial court properly ruled that Ohl's testimony "will assist the trier of fact" within the meaning of ER 702, as many of the jurors later impaneled would have little knowledge about driving a truck. Walsh's remedy was not to bar Martini's evidence, but to present its own contravening evidence on this genuine issue of material fact.

Walsh also moved to strike the testimony of an expert named Richard Cook. His qualifications were not established before summary judgment; thus, his testimony should not have been considered at summary judgment, and it is omitted from the text. His qualifications were, however, established later at trial. On remand then, Cook's testimony is as admissible as Ohl's.

[17] CP at 294.

"very slow or are stopped."[18] It stated in a section titled "COMMUNICATING:"

> **Slowing Down.** Warn drivers behind you when you see you'll need to slow down. A few light taps on the brake pedal—enough to flash the brake lights—should warn following drivers. *Use the 4-way emergency flashers for times when you are driving very slow or are stopped.* Warn other drivers in any of the following situations:
>
> - **Trouble ahead.** The size of your vehicle may make it hard for drivers behind you to see hazards ahead. If you see a hazard that will require slowing down, warn the drivers behind by flashing your brake lights.
>
>   . . . .
>
> - **Driving Slowly.** Drivers often do not realize how fast they are catching up to a slow vehicle until they are very close. *If you must drive slowly, alert following drivers by turning on your emergency flashers if it is legal.* (Laws regarding the use of flashers differ from one state to another. Check the laws of the states where you will drive.)[19]

The Guide further stated in a section titled "SEEING HAZARDS:"

> **Hazardous Roads.**
>
> Slow down and be very careful if you see any of the following road hazards:
>
> - **Work Zones.** When people are working on the road it is a hazard. There may be narrower lanes, sharp turns, or uneven surfaces. Other drivers are often distracted and drive unsafely. Workers and construction vehicles may get in the way. Drive slowly and carefully near work zones. *Use your 4-way flashers or brake lights to warn drivers behind you.*[20]

---

[18] CP at 116.

[19] CP at 116-17 (emphasis added).

[20] CP at 118 (emphasis added). With respect to the Guide's admissibility and effect, *see* ER 803(a)(17) (permitting admission of "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations"); *Kelley v. Howard S.*

As noted above, the trial court granted Walsh's motion. It reasoned that Stewart, and thus Walsh, did not owe Martini a legal duty. It stated:

[T]here is no duty for a trucker in a situation such as this absolutely to have their flashers on. Consequently, I'm going to grant the defendant's motion for summary judgment in regard to the Defendant Walsh Brothers Trucking and find that as a matter of law there has been no showing that there was a duty.

. . . I am well aware that there is, if you will, a common law duty to exercise ordinary care and caution. However, that is not a subjective issue in regard to what affirmative duties must be taken. There are statutes that deal with that. . . . I have considered Washington statutes, I've look[ed] at the federal law, and I've also looked at the "Commercial Driver's Guide" put out by the State of Washington Department of Licensing specifically at Page 2-23 and 2-24. I'll note that at Page 2-23 under a paragraph captioned "Slowing Down. Warn drivers behind you when you see you'll need to slow down. A few light taps on the brake pedal—enough to flash the brake lights— should warn following drivers." Goes on to say, "Use the 4-way emergency flashers for times when you are driving very slow or are stopped. Warn other drivers in any of the following situations," and then it goes through a series. That language alone leads me to believe that there is more than one way to deal with a situation and it is not an absolute breach of a driving duty to elect a few lights [sic] taps on the brake pedal as opposed to emergency flashers.

. . . Under "Driving Slowly. If you must drive slowly, alert following drivers by turning on your emergency flashers if it is

*Wright Constr. Co.*, 90 Wn.2d 323, 338, 582 P.2d 500 (1978) ("safety codes issued by private bodies, and government standards not having the force of law, are admissible where relevant, trustworthy and necessary to prove the matter contained therein"); *Nordstrom v. White Metal Rolling & Stamping Corp.*, 75 Wn.2d 629, 641, 453 P.2d 619 (1969) (where the trial court finds a publication relevant and trustworthy, codes or publications by private bodies are admissible); *Kohn v. Georgia-Pac. Corp.*, 69 Wn. App. 709, 724, 850 P.2d 517 (wage survey admissible because relied upon by persons in the relevant occupation), *review denied*, 122 Wn.2d 1010 (1993); *Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 813, 701 P.2d 518 (1985) ("Government standards not having the force of law are admissible where relevant, trustworthy and necessary to prove the matter contained therein."); *Raybell v. State*, 6 Wn. App. 795, 805, 496 P.2d 559 (highway safety manuals properly admitted with cautionary instruction), *review denied*, 81 Wn.2d 1003 (1972).

legal." That is a[n] advisory statement rather than the impo-
sition of a duty. I do think that it's clear that this Driver's Guide
is a guide, it is not necessarily conclusive on issues. As a matter
of fact, I think the Guide itself . . . makes the point that this is
not to be conclusive on issues of law and it's not to be used as
a rule book in the legal context.[21]

■■■ As Martini correctly argues, the trial court mistook
the nature of Stewart's duty. Duty is a question of law.[22] In
an auto accident case like this, the defendant driver owes a
duty of ordinary care to other nearby drivers,[23] whether or
not a statute applies.[24] If a statute applies and was vio-
lated, the violation may be evidence of negligence, but it is
not negligence per se.[25] Here then, Stewart owed Martini a
common law duty of care, whether or not a statute required
the use of four-way flashers.

---

[21] RP (May 11, 2001) at 44-45.

[22] *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996);
*Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 128, 875 P.2d 621
(1994); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360
(1991); *Nivens v. 7-11 Hoagy's Corner*, 83 Wn. App. 33, 41, 920 P.2d 241 (1996),
*aff'd*, 133 Wn.2d 192, 943 P.2d 286 (1997); *Schooley v. Pinch's Deli Mkt., Inc.*, 80
Wn. App. 862, 866, 912 P.2d 1044 (1996), *aff'd*, 134 Wn.2d 468, 951 P.2d 749
(1998); *Niece v. Elmview Group Home*, 79 Wn. App. 660, 668, 904 P.2d 784 (1995),
*aff'd*, 131 Wn.2d 39, 929 P.2d 420 (1997); *Shepard*, 75 Wn. App. at 205; *Howard
v. Horn*, 61 Wn. App. 520, 523, 810 P.2d 1387, *review denied*, 117 Wn.2d 1011
(1991).

[23] *Robison v. Simard*, 57 Wn.2d 850, 851, 360 P.2d 153 (1961) ("All dri-
vers . . . must exercise ordinary care."); *Hough v. Ballard*, 108 Wn. App. 272,
281, 31 P.3d 6 (2001) (no specific duty of care at intersection "other than the
general duty to exercise ordinary care"); *Hammel v. Rife*, 37 Wn. App. 577, 581,
682 P.2d 949 (approving jury instruction that stated "duty to exercise ordinary
care to avoid collisions rests upon both drivers"), *review denied*, 102 Wn.2d 1007
(1984); *see also* 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL
70.01, at 443-44 (3d ed. 1989) ("It is the duty of every person using a public street
or highway [whether a pedestrian or a driver of a vehicle] to exercise ordinary care
to avoid placing [himself or herself or] others in danger and to exercise ordinary
care to avoid a collision.") (alteration in original).

[24] *See Mathis v. Ammons*, 84 Wn. App. 411, 419, 928 P.2d 431 (1996) (tractor
driver violated statute requiring amber lights, but whether violation was breach
of ordinary care was question for jury), *review denied*, 132 Wn.2d 1008 (1997).

[25] RCW 5.40.050; *Alston v. Blythe*, 88 Wn. App. 26, 37-38, 943 P.2d 692 (1997)
(affirming trial court instruction that statutory violation " 'is not necessarily
negligence, but may be considered by you as evidence in determining negligence' ")
(citation omitted); *Mathis*, 84 Wn. App. at 418 ("breach of a statutory duty is not
negligence in and of itself, but rather is evidence of negligence").

■ ■ The central question regarding Walsh is not whether Stewart owed a duty of ordinary care, but whether a rational trier of fact could find that Stewart breached his duty of ordinary care. Other ways of phrasing the same question are whether a rational trier could find that Stewart was negligent;[26] whether Martini met his burden of production on the issue of Stewart's negligence;[27] whether Martini met his burden of producing evidence sufficient to support a finding by the jury that Stewart was negligent;[28] whether the record contains "substantial evi-

---

[26] *Fink v. Dixon*, 46 Wn.2d 794, 797, 285 P.2d 557 (1955) ("In order to find that appellant . . . was negligent, it must be proved that it performed or failed to perform some act which a reasonably prudent person would or would not have done under the same or similar circumstances."); *Sys. Tank Lines v. Dixon*, 47 Wn.2d 147, 151, 286 P.2d 704 (1955) ("negligence consists in the doing of an act which a reasonable man would not have done, or in the failure to do an act which a reasonable man would have done under similar circumstances"); *Estate of Templeton v. Daffern*, 98 Wn. App. 677, 682, 990 P.2d 968 ("when a defendant fails to exercise as much care as a reasonable person would exercise . . . [a]ny such failure is 'negligence' "), *review denied*, 141 Wn.2d 1008 (2000); *Alston*, 88 Wn. App. at 31 ("a plaintiff claiming negligence must show that the defendant owed a duty of reasonable care to the plaintiff, and that the defendant failed to exercise such care"); *Mathis*, 84 Wn. App. at 416 ("Breach is the failure to exercise ordinary care . . . also called 'negligence.' ").

[27] *State v. Deal*, 128 Wn.2d 693, 706, 911 P.2d 996 (1996) (Pekelis, J., concurring) ("the defendant has already met his burden of production on the issue of intent"); *see In re Dependency of C.B.*, 61 Wn. App. 280, 283, 810 P.2d 518 (1991) (discussing burden of production); 2 McCORMICK ON EVIDENCE § 338, at 416-21 (John W. Strong ed., 5th ed. 1999) (same).

[28] *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 667, 880 P.2d 988 (1994) (when the burden of production is met, "the evidence is sufficient"), *cert. denied*, 513 U.S. 1112 (1995); *Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135, 64 P.3d 691 (burden of production is "to present sufficient evidence"), *review denied*, 150 Wn.2d 1016 (2003); *State v. Pineda*, 99 Wn. App. 65, 77, 992 P.2d 525 (2000) (burden of production is to "produce evidence sufficient to support" the needed findings); *Colonial Imps. v. Carlton N.W., Inc.*, 83 Wn. App. 229, 239, 921 P.2d 575 (1996) (burden of production requires sufficient evidence); *State v. Cole*, 74 Wn. App. 571, 578, 874 P.2d 878 (the sufficiency issue is essentially "the issue of . . . burden of production"), *review denied*, 125 Wn.2d 1012 (1994); *Hatfield v. Columbia Fed. Sav. Bank*, 68 Wn. App. 817, 825, 846 P.2d 1380 ("The burden of production is met when the plaintiff produces evidence sufficient to support a finding of each element of the cause of action.") (citation omitted), *review denied*, 121 Wn.2d 1030 (1993); ROGER C. PARK ET AL., EVIDENCE LAW § 4.06, at 93 (1998) (party meets burden of production by offering "sufficient evidence to merit submission of the case to the jury"); CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE § 3.1, at 126 (2d ed. 1995) (to say a party bears the burden of producing evidence is to say that she must offer "sufficient evidence to enable a reasonable

dence" or "prima facie proof" that Stewart was negligent;[29] and whether Martini "came forward" with evidence sufficient to support a finding that Stewart was negligent.[30]

The answer to the question is yes, regardless of how the question is phrased. Ohl testified that "any time a truck is down below 10 to 15 miles an hour below the speed limit, they need to have their four-way flashers or their hazard lights on,"[31] and that Stewart "needed to have his four-way flashers on as he was slowing down."[32] The *Washington State Commercial Driver's Guide* states that "[i]f you must drive slowly, alert following drivers by turning on your emergency flashers,"[33] and that a work zone may present that kind of situation. A jury could take this evidence in the light most favorable to Martini, and if it chose to do that, it could rationally find that a reasonable person in Stewart's shoes would have activated his four-way flashers while slowing, and that Stewart was negligent when he did not do that. Walsh presented contrary evidence, but its effect was to create, not eliminate, an issue of fact on whether Stewart

---

person to find in her favor"), § 3.2, at 130 ("party carries burden of production by introducing evidence sufficient to support the findings of fact").

[29] *Colonial Imps. v. Carlton N.W., Inc.*, 121 Wn.2d 726, 734, 853 P.2d 913 (1993) (" 'burden of production', need only be met by substantial evidence"); *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 364, 753 P.2d 517 (1988) (burden of production requires evidence "sufficient to meet the prima facie case"); *State Farm Fire & Cas. Co. v. Huynh*, 92 Wn. App. 454, 465, 962 P.2d 854 (1998) (burden of production requires producing "substantial evidence"); *In re Welfare of S.V.B.*, 75 Wn. App. 762, 768, 880 P.2d 80 (1994) ("if substantial evidence supports its findings . . . the State met its burden of production"); MUELLER & KIRKPATRICK, *supra* § 3.2, at 130-31 (burden of production is met by proving " 'prima facie' " case).

[30] *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 625, 818 P.2d 1056 (1991) ("The plaintiff must come forward with evidence sufficient to establish the existence of each essential element of its case."); *State v. Hoffman*, 116 Wn.2d 51, 74, 804 P.2d 577 (1991) ("The burden is on a moving party to come forward with sufficient facts to warrant the exercise of discretion in his or her favor."); *Parsons v. St. Joseph's Hosp. & Health Care Ctr.*, 70 Wn. App. 804, 808, 856 P.2d 702 (1993) ("the plaintiff must come forward with evidence sufficient to support findings").

[31] CP at 293.

[32] CP at 294.

[33] CP at 117.

had complied with his duty of ordinary care. We conclude that the trial court erred by granting Walsh's motion for summary judgment.[34]

## II

Leaving Walsh, we turn to the State and Lakeside. Martini claims that the trial court erred at trial (A) by not granting his challenge of Johnston for cause; (B) by admitting evidence that showed an absence of other accidents that same night; and (C) by instructing on the duty of a following driver.

## A

The first issue is whether, under the plain language of RCW 4.44.180(2), the trial court erred by denying Martini's challenge for cause to a prospective juror employed by the State.[35] The trial court reasoned:

---

[34] We do not overlook that Martini may well have been more negligent than the defendants. Unlike some other jurisdictions, however, Washington does not bar a plaintiff from recovering if he or she is more than 50 percent negligent. RCW 4.22.070; *see, e.g., Torres v. United States*, 953 F. Supp. 1019, 1026 (N.D. Ill. 1997) ("if plaintiff's negligence was 50 percent or less of the total proximate cause of her injury, plaintiff is allowed to recover"); *McCormick v. United States*, 539 F. Supp. 1179, 1182 (D. Colo. 1982) ("if the plaintiff is more than fifty percent negligent, he cannot recover any damages as a matter of law"); *DeSanctis v. Lynn Water & Sewer Comm'n*, 423 Mass. 112, 666 N.E.2d 1292, 1298 (Mass. 1996) (because "the plaintiff bore more than 50% of the responsibility for his damage, the comparative negligence statute bars the plaintiff from recovering any damages") (citation omitted); *Smith v. Jenkins*, 1994 OK 43, 873 P.2d 1044, 1047 n.15 (a plaintiff more than 50 percent negligent may not recover); *White v. Hansen*, 837 P.2d 1229, 1237 (Colo. 1992) ("fifty percent [i]s the point at which the plaintiff could not recover damages he himself has caused").

[35] The concurrence raises and discusses at length the question whether Martini is precluded from appealing the denial of his challenge to Johnston because he exhausted his peremptory challenges on potential jurors other than Johnston. We omit that question because neither party has raised, briefed, or argued it. Our omission should not be interpreted to mean that we agree with the concurrence's reasoning or result. *See, e.g., State v. Fire*, 145 Wn.2d 152, 158, 34 P.3d 1218 (2001) (as indicated in *United States v. Martinez-Salazar*, 528 U.S. 304, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000), "if a defendant believes that a juror should have been excused for cause and the trial court refused his for-cause challenge, *he may elect not to use a peremptory challenge* and allow the juror to be seated. After conviction, he can win reversal on appeal if he can show that the trial court abused its

As to the issue of whether or not all State employees would be removed for implied bias, I'm going to deny that motion. I realize that's an issue of first impression.

. . . .

. . . I simply do not find that the statute clearly says that the State is the absolute party. I think although the State is named as a party, it actually says State of Washington, comma, Department of Transportation.[36] And my ruling here today specifically is that that Department is the employer rather than the State of Washington as a whole for the purposes of implied bias.[37]

■ As no one assails the constitutionality of RCW 4.44.180(2), we are concerned only with statutory construction.[38] When construing a statute, we must ascertain whether it has one, or more than one, reasonable meaning. If it has only one reasonable meaning, we must implement that meaning, which is said to be "plain."[39] If it has two or

discretion in denying the for-cause challenge.") (emphasis added); *State v. David*, 118 Wn. App. 61, 74 P.3d 686 (2003); *State v. Gonzales*, 111 Wn. App. 276, 45 P.3d 205 (2002), *review denied*, 148 Wn.2d 1012 (2003).

[36] This may have been an error. The only complaint in the record on appeal, an amended one, names the State of Washington, but not the Department of Transportation.

[37] RP (Mar. 1, 2002) at 3, 6.

[38] *Compare United States v. Wood*, 299 U.S. 123, 57 S. Ct. 177, 81 L. Ed. 78 (1936), in which the issue was constitutionality. Before 1935, active and retired federal employees could not serve on federal prosecutions brought in the District of Columbia. *Wood*, 299 U.S. at 132-33. In 1935, Congress enacted a statute that allowed such persons to serve. *Wood*, 299 U.S. at 133. Shortly after the new statute took effect, the defendant was convicted by a jury that included such persons. *Wood*, 299 U.S. at 130-31. On appeal to the United States Supreme Court, the defendant contended that such persons were automatically biased against him, so that their inclusion on his jury was unconstitutional. *Wood*, 299 U.S. at 133-34. The Court upheld the statute, reasoning that in a criminal case it was not rational to impute bias "simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of" the particular case. *Wood*, 299 U.S. at 149.

[39] *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003) ("If the statute's meaning is plain on its face, we must give effect to that plain meaning . . . ."); *City of Seattle v. Guay*, 150 Wn.2d 288, 300, 76 P.3d 231 (2003) ("Language . . . is unambiguous unless it is susceptible to more than one reasonable meaning."); *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002) (" '[i]n an unambiguous statute, a word is given its plain and obvious meaning.' ") (quoting *Addleman v. Bd. of Prison Terms & Paroles*, 107

more reasonable meanings, it is "ambiguous,"[40] and we must implement whichever meaning the legislature intended.[41]

█ Under RCW 4.44.130, a party's challenge to a prospective juror can be for cause or peremptory.[42] Under RCW 4.44.150, a challenge for cause can be general or particular.[43] Under RCW 4.44.170(1), a particular challenge for cause can be for "such a bias as . . . in judgment of law disqualifies the juror, and which is known . . . as implied bias."[44] Under RCW 4.44.180(2), bias is implied whenever a prospective juror is "in the employment for wages[ ] of the adverse party."[45]

---

Wn.2d 503, 509, 730 P.2d 1327 (1986)); *State v. Oakley*, 117 Wn. App. 730, 734, 72 P.3d 1114 (2003) ("When a statute's language is unambiguous, we will not alter its plain meaning by construction."); *State v. Wood*, 117 Wn. App. 207, 211, 70 P.3d 151 (2003) ("When interpreting a statute, we are required to give the words of a statute their plain meaning.").

[40] *Wingert v. Yellow Freight Sys.*, 146 Wn.2d 841, 852, 50 P.3d 256 (2002) (a statute is ambiguous when it is "susceptible to more than one reasonable interpretation"); *Berger v. Sonneland*, 144 Wn.2d 91, 105, 26 P.3d 257 (2001) ("A statute is ambiguous if it can reasonably be interpreted in two or more ways . . . ."); *Burton v. Lehman*, 118 Wn. App. 307, 312, 76 P.3d 271 (2003) ("A statute is ambiguous if it is susceptible of more than one meaning or reasonable interpretation."); *Wash. Fed'n of State Employees v. State Pers. Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989) ("Statutory language is deemed to be ambiguous when it is susceptible to more than one reasonable interpretation.").

[41] *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (where statute is ambiguous, the court must discern the legislature's intent); *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) ("If the statute is ambiguous, the courts must construe the statute so as to effectuate the legislative intent."); *Burton*, 118 Wn. App. at 312 ("we must construe ambiguous language in a statute to effect the intent of the legislature"); *In re Marriage of Wilson*, 117 Wn. App. 40, 57, 68 P.3d 1121 (2003) (Kurtz, J., dissenting) ("This court applies the rules of statutory construction to determine the legislative intent only if the statute is ambiguous.").

[42] RCW 4.44.130.

[43] RCW 4.44.150.

[44] RCW 4.44.170(1).

[45] RCW 4.44.180(2) provides in full:

A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:

. . . .

It is not contended here that these statutes are ambiguous. RCW 4.44.180(2) plainly states that the employee of an adverse party is impliedly biased, and RCW 4.44.170(1) plainly states that a challenge for cause can be based on implied bias. The State was a party adverse to Martini, and the State employed Johnston for wages. To apply the principles of statutory construction is to give RCW 4.44-.180(2) its plain meaning; and to give RCW 4.44.180(2) its plain meaning is to conclude that Martini had the right to challenge Johnston for cause.

The State focuses on *State v. Johnson*,[46] which judicially crafted an exception to former RCW 4.44.180(2)'s plain meaning. *Johnson* held that bias should not be implied when, in a criminal case brought by the county prosecutor, the defendant challenges a prospective juror who is employed by the State of Washington. *Johnson* reasoned that a state employee called to serve in that type of case is not likely to "be influenced by [his or her] employment relationship with an arm of the State that is not prosecuting the criminal action,"[47] for there is not "a substantial relationship between the interests the prospective juror has in his employment and the interest the government is advancing as a litigant."[48]

The State acknowledges that *Johnson*'s judicially crafted exception has never been extended to civil cases.[49] It asks, however, that we do that now. It urges that "absolute" disqualification of state employees is not "essential to the

---

(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to the adverse party; or being a member of the family of, or a partner in business with, or in the employment for wages, of the adverse party, or being surety or bail in the action called for trial, or otherwise, for the adverse party.

[46] *State v. Johnson*, 42 Wn. App. 425, 712 P.2d 301 (1985), *review denied*, 105 Wn.2d 1016 (1986).

[47] 42 Wn. App. at 429.

[48] 42 Wn. App. at 429.

[49] *See Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 759, 812 P.2d 133 (1991) ("this judicially crafted exception . . . has never been extended to civil cases").

impartiality of the jury,"[50] and that a state employee should be disqualified only if he or she is employed by the department whose actions are contested in the suit. It concludes that Johnston was entitled to serve here because, even though she was employed by the State, she was not employed by WSDOT.

We would create several problems by granting the State's request. First, we would fundamentally alter the plain meaning of RCW 4.44.180(2). The statute takes a blanket approach, implying bias from the mere existence of an employment relationship between the prospective juror and an adverse party. The State proposes either an individualized approach or a departmental approach that would imply bias only if the *particular* employment is substantially related to the interests of that party in the case. The State emphasizes its individualized approach by arguing that "Martini had ample opportunity to extensively voir dire potential jurors, such as Ms. Johnston, to expose any actual bias based on her [state] employment."[51] The State emphasizes its departmental approach by arguing that Johnston was not subject to implied bias because, even though she was employed by the State, she was not employed by WSDOT. Adoption of either approach would be contrary to, and eliminate or abridge, RCW 4.44.180(2)'s concept of implied bias.

Second, we would not be able to limit our holding to the State. If a state employee could sit when the State is an adverse party, so long as he or she is not employed in the department whose work is contested, why could not the employee of any other large employer—for example, King County, the City of Seattle, Microsoft, or Boeing—do the same when his or her employer is an adverse party? The State assumes it is unique, which is true for criminal cases like the one *Johnson* addressed. The assumption is not valid in civil cases, however, for it cannot rationally be said

---

[50] Br. of State/Lakeside Indus. at 11 (emphasis omitted).

[51] Br. of State/Lakeside Indus. at 15.

that state employees as a group are any more or less biased toward their employer than King County, Seattle, Microsoft, or Boeing employees would be toward theirs.

Third, we would be skewing the employment relationship among the State and its employees. The State argues, in effect, that it does not employ its employees; instead, it says, each of its departments separately employs only those employees who work for that department. In our view, however, the State—not each of its separate departments—employs its employees.

Fourth, we would be balancing competing values, a task the legislature has already performed and into which we should not intrude. The wisdom of allowing an adverse party's employee to sit on a jury depends not only on the prospective juror's actual bias or lack thereof, but also on the appearance of unfairness that can result when a jury rules for the employer of one of its members. Here for example, Martini asserts that it "must appear [improper] to the public—to say nothing of the parties themselves—to have a case against a defendant decided by someone to whom the defendant pays money."[52] The legislature weighed and balanced these competing values when it enacted RCW 4.44.180(2), and it may do so again if it thinks times have changed; but we cannot and should not override its plainly expressed views.

Fifth, we would be overlooking the fact that the legislature has recently manifested an intent to *expand,* not contract, the availability of challenges for cause under RCW 4.44.180(2). In 2003, the legislature amended RCW 4.44-.180(2) to allow such challenges not just to the employees of an *adverse* party, but to the employees of *any* party. For all of these reasons, we hold that under former RCW 4.44.180(2) the employee of an adverse party, including the State, may be challenged for cause in a civil case, and that the trial court erred by denying Martini's challenge to Johnston.

[52] Br. of Appellant at 29.

B

The next issue is whether evidence showing the absence of other accidents on the evening in question was "irrelevant . . . , prejudicial, and should have been excluded."[53] We address this issue because it is likely to arise on retrial.

■ As already noted, the trial court permitted a Lakeside supervisor to testify that no other accidents occurred near the repaving project—but only after it limited such evidence to the night of August 8-9, 1997. The trial court reasoned:

> It's pretty clear to this Court that the absence of other accidents on this stretch of road at other times would not be relevant. When I say other times, I mean under other circumstances, I think that would be the more appropriate way of characterizing that. However, I believe that there is relevance to the issue of the lack of other accidents under similar circumstances. . . .
>
> It's my understanding . . . that there will be issues regarding traffic control signage and so forth on the part of the defendants. I will allow evidence regarding the lack of other accidents certainly on the evening in question during the course of these traffic controls or signs . . . .
>
> On the other hand, I am granting the motion in regard to the absence of other accidents which were not under these same circumstances.[54]

In *Stark v. Allis-Chalmers*,[55] a man was operating an HD6G tractor loader when its rear end "pitched up" and threw him over the hood.[56] He was killed, and his widow sued for wrongful death. The trial court admitted "evidence establishing that no prior accident of the nature claimed by appellant had occurred involving any of the 10,000 HD6G

---

[53] Br. of Appellant at 33 (emphasis omitted).

[54] RP (May 21, 2001) at 35-36.

[55] 2 Wn. App. 399, 467 P.2d 854, *review denied*, 78 Wn.2d 993 (1970).

[56] 2 Wn. App. at 401.

tractor loaders manufactured by Allis-Chalmers."[57] The evidence came in through the manufacturer's chief engineer, who "testified there were no reported accidents of the nature explained by appellant."[58] The jury returned a defense verdict, and the plaintiff appealed. Affirming, Division One stated:

> The trial court may allow introduction of testimony of lack of accidents where circumstances are similar in the judge's discretion. It may be relevant to show (1) the non-existence of the defect or condition alleged; (2) that the injury was not caused by the defect or condition charged; (3) that the situation was not dangerous; or (4) want of knowledge of, or ground to realize, the danger. C. McCormick, Evidence, § 167 (1954); 5 R. Meisenholder, Wash. Prac. § 6 (1965); *Gabel v. Koba*, 1 Wn. App. 684, 463 P.2d 237 (1969).[59]

In *Gabel v. Koba*,[60] some children were playing near a truck on the defendant's farm. One lit a match, the truck's gas tank exploded, and a four-year-old was killed. At trial, the defendant wanted to show "that no other child had been injured on [his] place or upon his machinery."[61] The plaintiff objected, and the trial court sustained. Division One affirmed, stating:

> Introduction of lack of accidents may be relevant and admissible if sufficient evidence of use of premises, as well as use under similar circumstances are shown. 5 Meisenholder, Wash. Prac. § 5 (1965). The trial court properly rejected the offered testimony as it included lack of accidents on all equipment on the farm, not just the truck, and therefore related to many factors which were not similar to the facts in this case.[62]

The two cited commentators are in accord. McCormick states that "few recent decisions" flatly exclude evidence

---

[57] 2 Wn. App. at 406.

[58] 2 Wn. App. at 406.

[59] 2 Wn. App. at 406.

[60] 1 Wn. App. 684, 463 P.2d 237 (1969).

[61] 1 Wn. App. at 692.

[62] 1 Wn. App. at 693.

showing a lack of other accidents, while "[a] large number of cases recognize that lack of other accidents may be admissible to show (1) absence of the defect or condition alleged, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger."[63] Tegland, whose book succeeded Meisenholder's, states:

> [A] party's lack of prior accidents is generally inadmissible to show a lack of negligence in the case at hand, but may be admissible for other purposes. The court has a measure of discretion in determining whether the prior situations and the present situation are sufficiently similar to justify admission of the evidence.[64]

The national trend is also in accord. According to an extensive annotation,[65] Washington and at least 24 other states, plus at least five federal courts, now take the position "that evidence of the absence of previous similar accidents at the same place where the plaintiff was injured in person or property is relevant and competent as tending to show that the conditions complained of were not so unreasonably dangerous as to render the defendant liable for failing to correct them, often noting that evidence of previous injuries at a particular spot was relevant and admissible, and that the two situations were similar."[66] According to the same annotation, 11 states and one federal court take a contrary position.

The evidence disputed here showed the absence of other accidents—but only on the night in question. The signs and other roadside conditions were not changed during that

---

[63] 1 McCORMICK ON EVIDENCE § 200, at 710 (John W. Strong ed., 5th ed. 1999) (footnotes omitted).

[64] 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 402.10, at 250-51 (4th ed. 1999) (footnotes omitted).

[65] Jay M. Zitter, Annotation, *Admissibility of Evidence of Absence of Other Accidents or Injuries at Place Where Injury or Damage Occurred*, 10 A.L.R. 5th 371 (1993).

[66] 10 A.L.R. 5th at 392.

night. Traffic ebbed and flowed, but that was a matter that the parties actively debated during trial and that the jury was equipped to account for. The evidence that the trial court admitted was short, to the point, and did not embroil the court in any extraneous inquiries. The trial court was not asked to consider a limiting instruction. Under these circumstances, the trial court did not abuse its discretion by ruling that conditions were sufficiently similar to warrant admission of the disputed evidence.

## C

The last issue is whether the trial court erred by instructing on the duty of a following driver. We address this issue because it is likely to arise on retrial.

■ ■ As already noted, the trial court instructed the jury, over Martini's objection, on the duty of a following driver. The trial court said:

> A statute provides that when one vehicle is following another vehicle, the primary duty of avoiding a collision rests upon the following vehicle. It may be considered evidence of negligence if the following vehicle collides with the vehicle ahead. It is the duty of the following vehicle to maintain such observation of the vehicle ahead that the following vehicle is able to safely stop during reasonably foreseeable traffic conditions.[67]

The trial court derived this instruction from RCW 46.61.145(1). That statute provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."[68]

Martini argues that the statute should not be applied here because he was not "following" Stewart. He reasons that he was not "following" because of the "tremendous

---

[67] CP at 1979.

[68] RCW 46.61.145(1).

difference" between his speed and Stewart's speed,[69] and because he was not "tailgating" Stewart.[70] The State and Lakeside claim that whether Martini was following Stewart is a question of fact for the trier of fact.

By its terms, RCW 46.61.145 applies when one vehicle is "follow[ing]" another vehicle.[71] According to Division Three, it applies when a car is following a truck, the truck stops suddenly in the roadway, and the car hits the truck.[72] According to Division One, it does not apply when a car is *not following* a truck, the truck is *already stopped* in the roadway, and the car hits the truck.[73]

When the evidence conflicts on whether one vehicle is "following" another, the jury must decide.[74] Thus, Division Three has held that when the plaintiff testifies he was passing the defendant, but the defendant testifies the plaintiff was following the defendant, the trial court should give the defendant's proposed following-driver instruction—and also the plaintiff's proposed passing-driver instruction.[75]

The State and Lakeside proposed the instruction in issue here. When deciding whether they were entitled to it, we must view the evidence in the light most favorable to

---

[69] Br. of Appellant at 44.

[70] Reply Br. of Appellant at 26-27.

[71] RCW 46.61.145(1); *see also Felder v. City of Tacoma*, 68 Wn.2d 726, 728, 415 P.2d 496 (1966); *Miller v. Cody*, 41 Wn.2d 775, 778, 252 P.2d 303 (1953); *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 698, 72 P.3d 1093 (2003); *Rhoades v. De Rosier*, 14 Wn. App. 946, 949, 546 P.2d 930 (1976).

[72] *Riojas*, 117 Wn. App. at 698; *see also Felder*, 68 Wn.2d at 728; *Miller*, 41 Wn.2d at 778; *Rhoades*, 14 Wn. App. at 949; *Ryan v. Westgard*, 12 Wn. App. 500, 505, 530 P.2d 687 (1975).

[73] *Svehaug v. Donoghue*, 5 Wn. App. 817, 819, 490 P.2d 1345 (1971); *accord Szupkay v. Cozzetti*, 37 Wn. App. 30, 32, 678 P.2d 358 (1984).

[74] *Schaffner v. Saunders*, 6 Wn. App. 657, 659, 495 P.2d 702 (1972); *McGlothlin v. Cole*, 3 Wn. App. 673, 677, 477 P.2d 47 (1970).

[75] *Schaffner*, 6 Wn. App. at 659; *McGlothlin*, 3 Wn. App. at 677.

them.[76] Stewart testified that he was not yet stopped when Martini hit him. Cook testified that Martini was going perhaps 40 miles per hour at the time of impact. The physical evidence did not reveal that Martini swerved or otherwise tried to avoid the truck, leading one of the investigating troopers to think that Martini "drove straight into the back end of this semi truck."[77] If a rational trier of fact were to take this evidence in the light most favorable to the defendants, as it would have the right to do, it could reasonably infer that Martini was following Stewart, was inattentive as Stewart was slowing, and lacked the time needed to take evasive action once he realized such action was needed. The evidence is sufficient to support a finding that Martini was following Stewart, and the trial court did not err by giving the following-driver instruction.[78]

Reversed and remanded for a trial involving all three defendants.

SEINFELD, J., concurs.

QUINN-BRINTNALL, C.J. (concurring in the result) — I concur fully with the majority holding and reasoning that material issues of disputed fact exist precluding summary judgment for Walsh and that the trial court properly instructed on the duty of a following driver.

---

[76] *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000) ("When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction."); *see also State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Barker*, 103 Wn. App. 893, 907, 14 P.3d 863 (2000) (Schultheis, J., dissenting), *review denied*, 143 Wn.2d 1021 (2001); *State v. Hanson*, 59 Wn. App. 651, 656, 800 P.2d 1124 (1990).

[77] CP at 88.

[78] Martini claims that the trial court at least should have balanced its instruction by including a description of the circumstances in which the following car doctrine does not apply, as well as the circumstances in which it does apply. He did not propose an instruction to that effect, so we have nothing to review at this time. Nothing herein bars him from seeking, at retrial, an instruction on when RCW 46.61.145 does not apply. *See Schaffner*, 6 Wn. App. at 659; *McGlothlin*, 3 Wn. App. at 677.

I also agree that the plain reading of RCW 4.44.180(2) required the court to grant Martini's challenge for cause to a prospective juror employed by the State. But, because the trial court's failure to exclude the juror who is statutorily disqualified but not demonstrably biased does not implicate Martini's constitutional jury trial rights, I do not believe this issue is properly preserved. Martini elected to exercise his remaining peremptory challenges on other jurors after the challenge for cause was denied and did not renew his request to excuse the previously challenged juror at the close of voir dire. Martini does not assert that the challenged juror was in fact biased against him or that the trial court's denial of his challenge for cause deprived him of a fair trial. Although the defendants have not argued that Martini waived his right to object to the seating of the challenged juror, in my opinion the issue is not properly preserved for our review.

"[A] party accepting a juror without exercising its available challenges cannot later challenge that juror's inclusion." *Dean v. Group Health Coop. of Puget Sound*, 62 Wn. App. 829, 836, 816 P.2d 757 (1991). In *Dean*, the trial court rejected plaintiff's motion to strike a juror for cause and motion for a new trial on the same grounds. 62 Wn. App. at 836-37. The appellate court affirmed, finding that the trial court properly found no cause to dismiss the mentally ill juror, that there was no showing that the juror's illness impeded his ability to perform his duties as a juror, and that Dean had failed to use his available peremptory challenge. *Dean*, 62 Wn. App. at 837-38. The court reiterated the rule from prior criminal cases that a party accepting a juror without exercising available challenges cannot challenge that juror's inclusion. *Dean*, 62 Wn. App. at 836. The facts indicate that Dean did not use all his peremptory challenges during the course of jury selection. The *Dean* court noted that applying a "more liberal standard to the failure to exhaust challenge[s]" than in a criminal case is inappropriate with the property interests at stake in a civil case. 62 Wn. App. at 836.

In a recent criminal case, *State v. Fire*, 145 Wn.2d 152, 34 P.3d 1218 (2001), the court addressed a rule outlined in *State v. Parnell*, 77 Wn.2d 503, 463 P.2d 134 (1969), which held that a defendant demonstrates prejudice simply by using a peremptory challenge on a juror who should have been struck for cause. But in *Fire*, the court modified *Parnell* and held that a defendant's use of a peremptory challenge cures the error absent a showing that a biased juror was allowed on the jury. 145 Wn.2d at 163-65. There is dicta in *Fire* that seems to suggest that a defendant need not use a peremptory challenge on an objectionable juror in order to preserve the issue for appellate review, citing language in a case from the United States Supreme Court, *United States v. Martinez-Salazar*, 528 U.S. 304, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000). But in both *Fire* and *Martinez-Salazar*, the defendant used a peremptory challenge to remove the objectionable juror. 145 Wn.2d at 157; 528 U.S. at 315. Here, Martini also exhausted his peremptory challenges, but on other jurors.

Both *Fire* and *Martinez-Salazar* were criminal cases and the defendants raised Sixth Amendment claims. 145 Wn.2d at 158; 528 U.S. at 315. Moreover, the *Fire* court found that a defendant cannot claim that he was prejudiced because no biased juror sat on the jury after the defendant used a peremptory challenge to strike the potentially biased juror. 145 Wn.2d at 165. Here, Martini is not pursuing a constitutional claim and could have exercised a peremptory challenge on the juror in question.

The United States Supreme Court has ruled that requiring a criminal defendant to exercise a peremptory challenge on a juror who should have been excluded from service for cause does not violate a capital defendant's constitutional rights. *Ross v. Oklahoma*, 487 U.S. 81, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988) (interpreting a state statute requiring such use of peremptory challenges).

No Washington case has directly addressed whether a party preserves a challenge to the trial court's denial of a motion for cause when it uses available peremptory chal-

lenges on other jurors after denial of its motion to strike for cause. But in similar situations, some federal circuits have questioned whether the defendant preserves for review the trial court's denial of the challenge for cause. In *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), the plaintiff unsuccessfully challenged a juror and then exhausted all of her peremptory challenges on other jurors. 248 F.3d at 622. Citing *Ross*, the court stated:

> A plaintiff may have a duty to use a peremptory challenge to remove a juror whom the judge correctly or incorrectly has failed to remove for cause, in which event a plaintiff who fails to use a peremptory challenge for this purpose will have forfeited the right to appeal the denial of the challenge for cause.

*Thompson*, 248 F.3d at 623. The *Thompson* court quoted the rationale from *Martinez-Salazar*, that the "litigant can let the biased juror be seated and seek to reverse the adverse judgment (if one results) on appeal on grounds of bias" and observed that the reasoning in *Martinez-Salazar* put the litigant in "a heads-I-win-tails-you-lose position: if he wins a jury verdict, he can pocket his victory, and if he loses, he can get a new trial." 248 F.3d at 623. But the discussion was dictum in both *Martinez-Salazar* and *Thompson*. In *United States v. Johnson*, 906 F.2d 1285, 1288 (8th Cir. 1990), the court questioned, but did not decide, whether an appeal of an unsuccessful challenge is preserved when the defendant used peremptory challenges on other prospective jurors.

Generally, to preserve a denial of a challenge for cause, the litigant must, upon an unsuccessful challenge, exercise a peremptory challenge. Jury selection error is reversible only if the defendant exhausted all peremptory challenges as follows:

> (1) excuse[d] the challenged juror with a peremptory challenge, (2) exhaust[ed] his peremptory challenges before the panel is completed, and (3) thereafter [sought], and [been] denied, peremptory challenge to another juror.

47 AM. JUR. 2D *Jury* § 233, at 909 (1995). The analysis and result of *State v. Aiken*, 72 Wn.2d 306, 434 P.2d 10 (1967), *vacated on*

*other grounds, Wheat v. Washington,* 392 U.S. 652, 88 S. Ct. 2302, 20 L. Ed. 2d 1387 (1968), is in accord with this general rule. Aiken's codefendant, Wheat, unsuccessfully challenged a juror and then apparently excused the juror with a peremptory challenge. The court found no prejudicial error because the defendant then exercised 12 additional peremptory challenges not provided by statute. *Aiken,* 72 Wn.2d at 350. In dicta, the court noted that Wheat was also precluded from challenging the jury because he failed to object to the denial of his challenges for cause after he exhausted his peremptory challenges. *Id.*

Allowing a party in a civil case to appeal the trial court's denial of his challenge for cause by exhausting otherwise available peremptory challenges on other jurors not challenged for cause, creates a Trojan horse for automatic reversal, unnecessarily rewards trial tactics, and improperly tips the scale in favor of granting a civil litigant's challenge of a juror for technical cause. If a challenge for cause is belatedly discovered and denied at a time when the challenging party has no remaining peremptory challenges, the challenging party has had neither the opportunity nor the resources to cure the error and thus the court's denial is properly preserved for our review.[79] But where, as here, the challenging party has the ability to cure the error at the time it is alleged to have been made and elects not to do so, he acquiesces in the seating of the challenged juror and should not be allowed to preserve this jury challenge for appeal in the event that he is dissatisfied with the verdict.

In addition, because I cannot find that evidence showing the absence of other accidents on the evening in question was wholly " 'irrelevant . . . , prejudicial, and should have been excluded,' " I concur with the majority's result on this issue. Majority at 169 (quoting Br. of Appellant at 33). I write separately, however, because a challenge to the admissibility of this evidence is likely to arise on retrial and I question the majority's conclusion that this is the type of

---

[79] *Aiken* suggests that a renewed objection to the denial of the challenge for cause after exhaustion of all peremptories is also required.

similar evidence referred to by the commentators Mc-Cormick[80] and Tegland.[81] These commentators suggest that evidence of the absence of other similar accidents may be relevant to show that the product or design is not defective because, if it was, more people who used it would have been injured in the same way. The key factor in the analysis on the admissibility of this absence of accident evidence is the consistency or the similarity of the items and conditions. Unlike the 10,000 model HD6G tractor loaders at issue in *Stark v. Allis-Chalmers*, 2 Wn. App. 399, 467 P.2d 854, *review denied*, 78 Wn.2d 993 (1970), the road conditions on the night of August 8-9 were transitory, created by the specific temporary sign placement and the progress of the road work project on the night in question. Moreover, assuming that the road was closed in order to clear and then investigate the Martini accident, Martini's accident itself altered the conditions on August 8-9 and arguably contributed to the absence of accidents during the period of time the road was closed after the collision. Put differently, under the absence of other accidents reasoning of McCormick and Tegland, the limited number of hours and temporary circumstances at issue here is too small and unpredictable a sample to be relevant.

Because I agree that summary judgment was improper, and the defendants do not argue that Martini waived objection to jury selection, I concur in the result.

Reconsideration denied May 25, 2004.
Review denied at 153 Wn.2d 1023 (2005).

---

[80] 1 McCormick on Evidence § 200, at 703 (John W. Strong ed., 5th ed., 1999).

[81] 5 Karl B. Tegland, Washington Practice: Evidence Law and Practice § 402.10, at 244 (4th ed. 1999).